Porter, J.*
The plaintiffs allege that they employed the defendant, an attorney and counsellor at law, to commence a suit by attachment, against Thos. H. Fletcher, a citizen of Tennesse, on a claim arising from his endorsement of a protested bill of exchange, drawn by C. Stump, of Nashville, on Stump, Eastland & *354 Cox, New-Orleans, for $8200, for which sum, together with the interest and damages, amounting in the whole to $10,500, he Fletcher was indebted to them. That for a reasonable fee and reward, by them to be paid the defendant agreed to conduct said suit skilfully, faithfully and diligently. But that, not regarding his previous agreement, he had unfaithfully and negligently, commenced it in the parish court, of the parish of New-Orleans, which had not authority to take cognizance of the same; when he ought to have brought it in the district court, for the first judicial district, which had jurisdiction of the matters and things thereunto appertaining; that the cause of action, on said bill of exchange, arose out of the limits of New-Orleans; that the supreme court of this state had decided long before the commencing of the suit, that the parish court had no jurisdiction of such cases, and that the defendant had due notice thereof.
East'n District.
March, 1821.
It is bound to solve doubtful questions of law and cannot refer them to the legislature.
An attorney and counsellor at law is liable to his client for the mismanagement of the suit, even tho' it be done without fraud.
But not, if through error of judgment, unless the error be very gross.
A judgment is not evidence, against the attorney, of the facts it states.
When proper evidence is not offered, the presumption is, not that the attorney neglected to offer it, but that the client failed to procure it.
They further aver, that by reason of the unskilfulness, mismanagement, and gross neglect of said Turner, they have lost their lien on time property attached, and with it the debt aforesaid; have been obliged to stop payment, *355 and have suffered damage to the amount of twenty thousand dollars, for which sum they pray judgment. Breedlove & al. vs. Fletcher, 8 Martin, 69.
The defendant, in his answer, denied all these allegations; the plaintiffs produced in evidence, the record in the case of Breedlove & Bradford vs. Fletcher, the case of Delille vs. Gaines, decided in the supreme court, March, 1817. That of Dunwoodie vs. Johnson, and Smith vs. Flower, both decided in the same court, in January term, 1819.
A witness, Lessassier, who proved, that in case the plaintiffs had recovered, he had monies of M‘Neil, Fisk & Rutherford, to meet the judgment: that he believed Fletcher, the endorser of the note, is now insolvent; he also detailed conversations as to different compromises, or offers of arrangement made to the plaintiffs after the commencement of the suit, one of which was rejected, because the damages would not be allowed, and the other, because the paper offered in discharge of the protested bill, was regarded by the plaintiffs as too difficult of collection.
N. Chamberlain, a witness for plaintiff, also deposed, that Fletcher was insolvent, and on *356 cross-examination, assigned very satisfactory reasons for the assertion.
The plaintiffs also offered to prove the insolvency of the drawers and drawees of the bill. But the court refused to admit the evidence : a bill of exceptions was taken to this opinion.
An extract from the minutes of the supreme court, attesting the admission of the defendant, as an attorney and counsellor at law, closed the evidence on the part of the plaintiffs.
On that of the defendant, records of seventy-seven cases brought in the parish court, were introduced for the purpose of shewing that it was customary to institute suits in that court, on contracts originating out of the parish, since the decision in the suit of Delille vs. Gaines.
It was admitted, that judge Derbigny dissented from the opinion delivered by the supreme court, in the case of Breedlove & Bradford vs. Fletcher.
The letter from the plaintiffs to the defendant, employing him as attorney, to bring suit against Fletcher, and have his property attached, was also produced. It was dated on Saturday evening, and requested that every thing might be prepared by Monday morning.
*357 To rebut the presumption arising from the practice of bringing suits in the parish court, the plaintiffs examined Isaac F. Preston, Alfred Hennen, and Levi Pierce, attornies, practising in the courts of this city.
The two first named gentlemen severally declared, that from the time the decision of the supreme court, in the case of Delille vs. Gaines, came to their knowledge, they had considered the parish court not to have jurisdiction in cases originating out of the parish. L. Pierce stated, that his opinion, as to the jurisdiction which he had before doubted, was fixed by the decision in the case of Dunwoodie vs. Johnson.
The cause on this evidence was submitted to a special jury, who found for the defendant.
The novelty of the present action, the large amount involved in its decision, and the circumstance that the judgment, which has to be pronounced, must eventuate in a total loss to the party cast, has given to this case a degree of interest which rarely occurs from the discussion of mere legal rights.
1. Various grounds of defence have been taken; the first is, that the decisions of the supreme court, in the cases of Delille vs. Gaines, *358 Smith vs. Flower, and Dunwoodie vs. Johnson, were wrong; that notwithstanding the opinions pronounced then, the defendant had a right to disregard them, and bring his action in the parish court of the parish of New-Orleans; and that there was error here in dismissing this case, for want of jurisdiction in that court.
2. That lawyers practising in this state are not under any obligation to notice the opinions which this court may pronounce, and that a difference of opinion between the court and the advocate, cannot make the latter responsible in damages.
3. That, if the jurisdiction of the parish court was doubtful, this tribunal had no authority to decide the question, but should have referred it to the legislature, such being the practice in Spain.
4. That the law cited by the plaintiffs, as to fault and negligence, applies only to attornies; and that gentlemen at our bar, practising both as counsellors and attornies, are not responsible in the latter capacity, because they act under the advice of themselves as counsellors, and they are not responsible as counsellors for errors of judgment, in giving that advice.
*359 5. That the defendant can only be made responsible for fault or negligence; that there was no fault, because that implies an act of the will, an intention to do wrong, of which it is not pretended, the defendant can be accused : and that there was no negligence, because that consists not in doing a thing incorrectly, but in failing to do it at all.
6. That at most, the defendant only committed an error of judgment, for which he is not responsible. That, in that error he was supported by the opinion and practice of many of his brethren, as the evidence proves, that a learned and able judge, then on the supreme bench, dissented from the decision in the cause of Breedlove & Bradford vs. Fletcher.
And lastly, that the plaintiffs have not produced legal evidence that the cause of action, in the case of Breedlove & Bradford vs. Fletcher, arose out of the parish of New-Orleans.
These points have been all urged with equal confidence and earnestness, by gentlemen of great eminence in their profession, and although an examination of each and every one of them, is perhaps not necessary, in the opinion which I have formed on the whole case; yet, as silence might be deemed an ac *360 quiescence in doctrines, some of which we regard as novel and dangerous, I have considered, that I would be wanting in my duty, if I suffered them to pass by without expressing my unhesitating dissent to them. First, as to the correctness of the decision of this court, in the case of Breedlove & Bradford vs. Fletcher, 8 Martin, 69.
In ordinary cases, I should deem it unnecessary, after a subject has been so frequently agitated, and so often pronounced on, to say any thing more than refer to the decisions of this court, by which the law had been settled. But, as there has been a change in some of the members of this tribunal, since the decision complained of, and as a contrary doctrine has been urged with a zeal which excited attention, it has been thought proper to examine the question again, and with an anxiety to correct the error into which the court might have fallen, if we could be satisfied it was one.
Nothing new has been presented in argument on the point, or, indeed, different from what was urged by the defendant, when counsel for the plaintiffs. After all that was then said, I see no reason to question the opinion, *361 already pronounced on the subject. It is a matter of surprise, how an act, which, in defining the jurisdiction of the parish court, used these words, “ concurrent with that of the court of the first district, in all civil cases, originating in the said parish,” ever could be construed to mean cases “ originating out of that parish.” The language of the act is surely very plain and intelligible, and stands not in need of interpretation. Being thus positive and clear, I do not perceive what aid can be derived, in the enquiry, from the act establishing the district court. Nor by what legal principle, a statute, which is explicit and imperative in its provisions, is to be controled and explained by ambiguous expressions in another. Civil Code, 4, art. 17.
The whole argument, indeed, resolves into this: That, because an erroneous construction was, perhaps, put on the law establishing the district court, that the same should be, therefore, extended to the parish. Admitting this to be the fact, I do not see the correctness of the reasoning. But I do not admit it, and I feel satisfied, that the jurisdiction of the district court was correctly expounded.
It is a fact, familiar to all persons acquaint *362 ed with formation of our present judiciary system, that the district courts, established by the act of 1813, were intended to take the place of the superior court of the territorial government, each to exercise within their respective limits, the same powers, and have the same jurisdiction that it enjoyed throughout the state. The intention of the legislature, on this head, has never been questioned. To have limited the authority of the court, as contended for by defendant, would have done violence to the will and intention of the law-maker, and in doing so, to have violated a cardinal rule in the construction of statutes. Civil Code, 4, art. 18.
Again, if that construction had been adopted, the court should have been led to the singular and most inconvenient result, that the legislature did not intend, and had, in fact, failed to provide any tribunal for the trial of causes which did not originate within the limits of each of our district courts. This would have been in opposition to another fundamental rule, that prohibits us from expounding a statute in such a way, as to lead to absurd and inconvenient consequences.
These reasons, I think, fully justify the uni *363 versal understanding of the bar and the bench, through the state, for the last eight years, in the jurisdiction of the district courts. But do any of these reasons apply to the parish court, so as to authorise a deviation from the positive expression of the law which creates it ? Certainly not. On the contrary, the intention of the legislature (as well from the language used in defining its powers, as from the provision for the payment of the judge’s salary) was manifested, to make it a tribunal of limited jurisdiction ; and yet, if we adopted the construction of the defendant's counsel, it would have unlimited jurisdiction. Because, they say, the words “jurisdiction, concurrent with the court of the first district, in all cases originating in the parish, must be understood, all cases that may be brought in that court.”
If the reasoning is not satisfactory, I may add to it, the key furnished to us of the intention of the legislature, by the French part of those acts establishing the two courts. That which creates the district, gives it jurisdiction of all the civil actions, “ qui pourront se presenter," that which defines the powers of the parish, restrains them to all civil cases, “ qui *364 prendront naissance dans les limites de la dite paroise; much was said, that according to the constitution, the English text was the law, and that we must follow it. This is, no doubt, true; and whenever the expressions in the English and French parts of the act differ, the latter must yield, or in other words, be disregarded. But when the law, as written in the language of the constitution, is doubtful, surely the sense in which the members of our legislature, who speak the French language, understood it, may be safely called to our assistance, to explain what is uncertain. They form a large and respectable portion of our legislature; frequently a majority of it. Many of them speak well, and understand perfectly, both languages; and the sense in which such men pass a law, is certainly a valuable means of ascertaining the understanding in which the whole body enact it; one which I do not feel myself at liberty to disregard.
I conclude, therefore, that the parish court had not jurisdiction of cases arising out of the parish of New-Orleans, and that, therefore, the first ground of defence fails.
The next objection, that the lawyers prac *365 tising in this state, are not under any necessity of noticing the judgments given by the supreme court, has, certainly, the merit of novelty, to justify an examination of its correctness.
In support of this position, a great deal of time was occupied in shewing, that the decisions were not law; that nothing could be properly called so, but those acts passed by that branch of our government, in whom the power of legislation is vested by the constitution. This is true, and we never before supposed that they were so considered. But as we are obliged, by our duty, to decide on every question that is brought before us, and, as many of these questions turn on ascertaining the true meaning of the law-maker, when the expressions used are ambiguous, whether that ambiguity be considered in relation to the language used in the act, or the applicability of the provision to particular cases; I had supposed it not doubted, that the decisions of this tribunal, were to be regarded as the interpretation of the legislative will; as an exposition of its meaning and intention. And that, until the legislative authority, by subsequent acts, chose to make different pro *366 visions on the subject, that it is an acquiescence on their part, that the court fairly understood their meaning, and wisely and faithfully expounded it. There is, also, a variety of questions presented for decision, where positive law is silent, and where recourse must be had to legal analogies, to arrive at truth. Is not the decisions which this court makes, amid the frequent conflicting opinions of foreign jurists, to be received as determining which doctrine is in force here ? We are told not; that recourse must be had to the law itself, and that law is found where, in some obscure commentator, who lived, perhaps, some centuries ago, and who is quoted, triumphantly, as better evidence of what is a a rule of action for the people of Louisiana, than the decisions of men, who, whatever in other respects, be their abilities, have, at least, the advantage of using the knowledge and the learning that latter times has produced—who enjoy the light of the age in which they live, and who have the aid of able counsel, discussing every subject on which they are called to pronounce an opinion.
This, then, is the fair extent to which the authority of the decisions of this tribunal may be carried. *367 They are evidence of what the law is, under such circumstances, as has been just stated, and as it is the duty of the court to see that they are correct, and that they are uniform; so, also, is it important, that society should know, that we feel ourselves bound by them, unless we are clearly, and beyond doubt, satisfied that they are contrary to law or the constitution, and that we never can consider it a proper discharge of duty, in any member of the bar, who pursues his profession, with an avowed determination to disregard them.
It is no answer to this reasoning, to say that the law is different from the decision of the court, for that is begging the question, and taking for granted, the very point which the court has otherwise decided.
On this view of the subject, I need not examine the difference between the authority to which decisions under our law are entitled, and those of the courts in England; many of the latter, as was truly stated, turn on the common law, many of them, however, grow out of the expressions used in their statutes, and are given in expounding them. Cases of the latter description are delivered under cir *368 cumstances similar to those in which this court pronounces here, and have, in that country, the same weight which I have just stated, the decisions of this tribunal should enjoy in this.
Nor do I find, that the opinion or practice of other countries is different on this head. In France, where the science of jurisprudence has been carried to great perfection, the decisions of their courts of last resort, are referred to, by the most eminent writers on the laws of that country, by D'Aguesseau, by Denisart, by Merlin, by Paillet, by Duguien, by Pothier, by the jurists who have published a late edition of the last mentioned author’s works.
Since the enactment of the different codes under the reign of Napoleon, an immense number of the reports of the decisions of their court of cassation, and other tribunals of appeal, have been collected and published with the utmost care, see Jurisprudence, du Code Civil, 22 vols., Sirey, Recueil general des Lois et des Arrets, 16 vols., Journal des audiences de la Cour de cassation, 14 vols., by Denevers. If, as contended here, decisions of courts, under the civil law, were only evidence of *369 the law between the parties litigating, why all this care in collecting and preserving them, and does not the simple fact of their publication, their rapid and extensive circulation, and the frequent reference to them, completely answer all that we have heard on this subject?
In Spain also, the decisions of their courts are quoted, to the same purpose, Febrero addicionado, pa. 2, lib. 3, cap. 3, sec. 2, n. 178, and many other passages in that author’s works.
Nor is there any assumption of power in giving the decisions of this court the authority just spoken of. The tribunals of the last resort, in every state of the union, hold the same doctrine, each in relation to their own judgments. They are acquiesced in, without objection, by the citizens of those states; men not unacquainted with their rights, or slow to perceive or check any usurpation of them. Congress appropriates annually, a sum of money, to ensure a publication of the decisions of the supreme court of the federal government; and here in Louisiana, the representatives of the people have expressed the same sense of their utility, by ordering the purchase of *370 the decisions of this court, and directing their distribution through the state.
I confess, therefore, that I have been unable to feel the force of what has been said in the argument of this cause, respecting the impropriety of considering the decisions of the court as any thing more than declaring the law between the parties. They, who in their zeal for their client, so eloquently urge this doctrine, would do well to reflect to what it leads. That its tendency is not to take power from this court, but to give it. That if we were under no obligation to follow that which we had decided ourselves, or what was declared law by our predecessors ; we would possess an authority dangerous to the citizen, and in the exercise of which, this tribunal would become at once feared and hated.
I conclude, therefore, that the second ground of defence fails.
The third ground of defence, which denies our right to decide in doubtful cases, and requires us to refer them to the legislature, is easily disposed of. Under our constitution and law, we have no such authority, and, instead of referring doubtful cases, I *371 think they are the very class of causes that it is most necessary we should decide.
The fourth, which contends for an exemption from all liability, because the defendant acted both as attorney and counsellor, is equally untenable. Persons may increase their responsibility by acting in a two-fold capacity, but cannot diminish it.
The fifth point made is, that fault or negligence can alone charge the defendant; that neither is proved here, as the first means an intention to do wrong, and the second a total neglect to perform an act, not performing it erroneously.
By the Partida, 3, 5, 26, sec. 26, attornies are made responsible for fraud and fault. If we construe the word fault, as insisted on by the defendant, it would be synonimous with fraud; for if the intention must combine with the act in doing wrong, then the agent acts fraudulently. We presume, therefore, that something else is intended; but it is unnecessary to decide that, as our statute, 1 Martin’s Dig. 528, has made attornies responsible for any neglect, by which their clients may suffer damage.
I think, that neglect may exist as well in *372 the careless manner of doing an act, as in not doing it. This is the meaning attached to the word, by the best philologists. It is the ordinary sense in which it is understood by mankind. We evidence our neglect by not doing what we are required to execute. We exhibit the same quality when we do it without paying attention to the ordinary means by which it can be correctly performed.
This ground of defence also fails.
It is still, however, insisted, that the act complained of, was nothing more than a mere error of judgment, and we have given to this point as serious consideration as we are able to bestow on any subject.
From the moment the cause was opened in argument, we were all of opinion that attornies are not responsible for an error in judgment.
But the doubt was, whether more had not been proved here.
Whether, after the repeated judgments of this court, on the subject of the jurisdiction of the parish court, there was a necessity for at all exercising the judgment in selecting a tribunal.
That, admitting the decisions of this tribu *373 nal to be neither law, or evidence of law, still, as they were evidence of the opinion on this subject, of those who had to pronounce on the cause, in the last resort. Whether it was ordinary diligence to bring an action in a court whose authority they had decided against, when there was another tribunal open, whose jurisdiction was not disputed.
Whether ordinary diligence might not have enabled the defendant to become acquainted with these decisions, and whether not knowing them, was not ordinary neglect.
But these considerations have been outweighed by reasons, which may be fairly urged on behalf of the defendant.
The decisions in the cases of Smith vs. Flower, and Dunwoodie vs. Johnson, 6 Martin, 9 and 12, had not been published at the time the suit of Breedlove & Bradford vs. Fletcher, was commenced, and all that can be required of any gentleman of the bar, is, that he should make himself acquainted with the decisions after publication.
That in Delille vs. Gaines, it is true, had been printed long before the suit was brought; but the point, as it respects the jurisdiction, *374 was not decided there: it is only said, that the authority of the parish court, to take cognizance of the case, might be doubted.
What was said in that case, it is evident, did not settle the question. It was not so considered. It appears not to have been noticed by many members of the bar; as it has been proved, that a number of gentlemen still continued to bring suits of a similar description in that court.
If that decision be left out of view, the jurisdiction was doubtful, and one, regarding which, men might fairly differ in opinion. Nay, with that decision, and after this court had intimated in the case of Smith vs. Flower, the same view of the question, and in that of Dunwoodie vs. Johnson, expressly decided it; a learned judge, then on the bench, dissented from the opinion of the majority, and held, that the defendant had properly brought the action.
No man is supposed to know any branch of the law perfectly, particularly when called on to act at once, and without time for reflection. The knowledge which we use the utmost industry to acquire, is often forgotten at the moment when most needed. The *375 science is a most extensive and difficult one. Cases frequently occur, when learned men differ, after the greatest pains is taken to arrive at correct result. No one, therefore, would dare to pursue the profession, if he was held responsible for the consequences of a casual failure of his memory, or a mistaken course of reasoning.
I do not wish to be understood to say, that cases may not arise, in which ignorance of the common and plain principles of the law and practice in our courts, or negligence in not properly using the knowlege the party possesses, will not make an attorney responsible. But here the parish court decided it had jurisdiction.
A learned judge of this court, which is composed only of three individuals, held, that that opinion was right.
Many members of the bar, and some of them gentlemen of much experience, pursued the same course. Under such circumstances, to make the defendant pay damages for error, is carrying the doctrine of responsibility further than, we think, the law will authorise, or than justice demands.
But even admitting all this to be doubtful, still the plaintiffs must fail on
*376 The last point made the defect of evidence, to prove that the contract on which the defendant brought this suit, did originate out of the limits of New-Orleans.
This is the very gist of the action; and the petition accordingly contains an averment, that the cause of action upon which the attachment was brought, did not originate within the limits of the parish and city of New-Orleans, but at Nashville, in the state of Tennessee. This is attempted to be proved by a record in the case of Breedlove & Bradford vs. Fletcher, in which this court decided, that the parish court had not jurisdiction of the cause, because the indorsement on the bill of exchange was made at Nashville, in the state of Tennessee.
It is a general principle of jurisprudence, that judgments are only evidence between the parties to the cause, or those who claim in the same right.
“ Sœpe constitutum est res inter alios judicatas aliis non prœjudicare," lib. 6, 3 de Re. jud.
“ Guisada cosa es e derecha que el juyzio que fuere dado contra alguno, non enfesca a otra." Part 3, tit. 22, ley 20. And in England the same doctrine is established. Phillips’ Evidence, 522.
*377 This is the general rule, and it is founded on obvious principles of justice.
There are cases which form an exception to it; these cases are well collected in a note to a treatise by Evans, on the authority of Res judicata, Evans' Pothier, vol. 2, 350. To them may be added, these decisions on deeds containing covenants of warranty and on bonds of indemnity, cited by the plaintiffs’ counsel.
There is still another exception, when the decree of the court is used, for the mere purpose of establishing the fact of such judgment having been given, or as the supreme court of the United States express it, where it is not introduced per se, as binding on the the rights of other parties, but as a fact in tracing title, or constituting a part of the muniments of an estate.
The judgment introduced here is evidence, that in the case of Breedlove & Bradford vs. Fletcher, the supreme court decided, that the cause be dismissed for want of jurisdiction in the parish court. Because, that is a naked fact in itself, but that judgment is not evidence against third persons, of the truth of the facts, on which the court, in that case, came to that conclusion; as to them it is res inter alios acta, *378 and non constat, that they could not have proved these facts to be otherwise.
The cases cited by the plaintiffs’ counsel, are on covenants of warranty, contained in deeds for land, or on bonds of indemnity. They have been carefully examined. They are decided as exceptions to the general rule. Now, as that rule is a most salutary one, it might be sufficient to say, that these exceptions ought not to be increased, unless positive authority require it. But this case is clearly distinguishable in principle.
In these cited, the court holds, that the judgment given against the party to be indemnified, is evidence against the party indemnifying. But in no case is the doctrine pushed so far as to declare, that it is not only evidence against the party by whom the bond of indemnity, or deed with covenant of warranty was given, but also, evidence that these deeds were made and executed by him.
Let us assimilate the case of the present defendant to those cited.
If the suit here, was brought on a written engagement of the defendant’s, that he would warrant the success of the plaintiffs in their former suit against Breedlove & Bradford, *379 the judgment of the court would be merely evidence, that they did not succeed in the cause; not evidence that the defendant entered into the contract of warranty; that would have to be proved by the production of the contract itself.
In this case, the allegation is negligence, which stands in place of the express contract just supposed. The judgment is no more evidence of that fact, nor of the facts which would justify the accusation, than it would be that he entered into the bond of indemnity in the other case.
In the case of Green vs. New River Company, 4 Term. Rep. 590; the court of king’s bench decided, that a verdict obtained in an action against a person for the negligence of his servant, is evidence in a subsequent action by the master against the servant, of the amount recovered, but not evidence of the negligence. The same principle is declared to be law, in the latest and best treatise we have on the rule of evidence. Phillips on Evidence, 229.
The plaintiffs contend, that the admission of the record made it evidence to every purpose. The law is otherwise, when a paper is introduced, which is legal evidence of one fact, and *380 not legal evidence of another, it can never he presumed that it was read in evidence, to establish any thing, which, by law, could not be proved by it. This court has already decided this point, in the case of Lartigue vs. Baldwin, 5 Martin, 496, nor is there any thing contained in the opinion delivered in Durnford vs. Jackson, 8 Martin, 58, which at all shakes or affects that decision.
Nor is there more weight in the objection, that if the defendant was not liable for sueing in a court which could not entertain the cause, he is responsible for negligence, in not giving proof that his case arose within the limits of the parish of New-Orleans. Because, the negligence, alleged in the petition, is for having brought a cause of a particular kind, in the parish court, and to that alone was the defendant bound to direct his defence; because, when proper evidence is not produced on the trial, the presumption is not that the lawyer neglected to offer, but that the client failed to furnish it.
It may, therefore, fairly be concluded, that there is not evidence before the court to justify the allegation, that the cause of action on which the suit was originally brought, did *381 arise out of the parish of New-Orleans, and, of course, the plaintiffs are not entitled to recover in the present action.
Livermore and Duncan for plaintiffs, Mazureau and Livingston for defendant.
The judgment of the district court ought therefore to be affirmed with costs.

 By an act of the legisture, the judges were directed to give seriatim, separate and distinct opinions.