WESTERN DIST.
*September*, 1836.

REEVES
*vs.*
TOWLES.

REEVES *VS.* TOWLES.

APPEAL FROM THE COURT OF THE FIFTH JUDICIAL DISTRICT, THE
JUDGE OF THE SEVENTH PRESIDING.

The assessment is the authority on which the sheriff or collector proceeds to demand and sell property for taxes. It is analogous to an execution issuing on a judgment. To support a sheriff's deed, the party relying on it must show a judgment and execution. So a deed for land purchased at a sale for taxes, unaccompanied by evidence of the assessment is insufficient to show a valid alienation, and that the former owner is divested of title.

Where the vendor assumes to sell without title, or a disclosure of the defects of his title, the vendee, though holding under a sale *à non domino*, may invoke the prescription of ten years.

But where A sells to B all his right, title and interest in and to a certain tract of land, which is vested in him by virtue of a sale for taxes, made by a parish judge, being for the taxes due thereon by C, the original owner: *Held*, that A is expressly exempted from warranty, except against himself; and his title, thus sold, being expressly referred to and set out, shows on its face the kind of claim, title or interest conveyed, and brings home to his vendee full knowledge of the title under which his vendor claimed, which, if defective, prevents the prescription of ten years from running.

A title, on the face of which a fatal defect is stamped, and which is known to the possessor, cannot be the basis of the ten years' prescription.

A title, to serve as the basis of the ten years' prescription, must be in itself translative of property. But the title which does not furnish evidence that all the formalities required by law have been complied with, has always been considered deficient in form, whenever the vendor acts in a public capacity or trust, and takes upon himself to sell the property of another.

Errors of law do not form a good foundation for acquiring property.

The deed of a tax collector, though it proves *rem ipsam, i. e.*, that he sold, yet it furnishes no evidence of his authority to sell, without proof of an assessment, and is therefore defective in *form*.

Where the defendant sets up in his answer to be the true owner of the plaintiff's title to the land in controversy, and alleges long possession under it, he cannot afterwards be permitted to dispute the *locus in quo*. He admits that the claim of the plaintiff covers the land in dispute.

This is a petitory action. The plaintiff claims a tract of land on the Bayou Têche, containing eight arpents front, with the depth of forty, situated immediately below that on which the defendant resides, and calling to bind on his lower line. The defendant's residence is on what is called the "Gravenberg tract." He is also in possession of the *locus in quo*.

The plaintiff alleges that he is the owner of this tract of land, which lies on the right or west side of the Bayou Têche, descending, bounded above by the land of the defendant, and below by lands formerly claimed by the heirs of Philo Norton; that said land was, on the 9th of May, 1813, sold by Patrick Johnson, the then owner, to John Reeves, and which was afterwards sold at the probate sale of said Reeves's succession, and purchased by the petitioner the 31st of January, 1831.

The plaintiff then alleges that the defendant, John Towles, has taken possession of said tract of land, and claims to be the true owner. He prays judgment, decreeing him to be the lawful owner thereof, and that he be put in possession.

The defendant pleaded the general issue, and averred, that on the 7th of October, 1816, he purchased from Jehu Wilkinson and H. G. White, a tract of land on the west side of the Bayou Têche, containing eight arpents front by the depth of forty, forming part of the plantation of which he is now in possession, being the same tract sold to the said Wilkinson and White, by deed of sale from the honorable James White, judge of the county and parish of Attakapas, dated the 9th November, 1809; that he, and those under whom he claims, have been in the uninterrupted possession of the premises, by virtue of a good and sufficient title, for more than twenty years. He pleads the prescription of ten and twenty years, and prays that the plaintiff's suit be dismissed.

WESTERN DIST. During the pendency of this suit, Dr. John Towles,
September, 1836. died, and his widow and heirs, were cited in as defend-
REEVES ants. In an amended answer, they aver, that on the 15th
*vs.*
TOWLES. April, 1816, the said John Towles purchased of Henry
Hargroider, as sole heir of Charles Hargroider, six arpents
front of land on the west side of the Bayou Têche, bounded
above by lands of his (Towles) and below by lands belonging
to the heirs of Philo Norton, of which the purchaser and his
vendors have been in possession, under a good title, &c., for
more than twenty years, and plead the prescription of ten
and twenty years, &c.

Upon these pleadings and issues the cause was tried before
court.

The plaintiff's written evidence consisted of the act of sale
from Patrick Johnson to Joseph Reeves, in 1813, and the
proceedings of the probate sale to the plaintiff, in 1831, of
John Reeves's estate. The commissioners' certificate and
act of confirmation by congress, in 1816, in the name of
Patrick Johnson, showed that this claim was founded on
settlement and cultivation before the change of government
in 1803, and required as its location that it should bind on
the Gravenberg tract, and run down the Bayou Têche eight
arpents in front, and run back to the depth of forty, so as to
include three hundred and twenty superficial arpents.

The defendants relied, first upon the deed of sale for the
taxes, made by judge White, in 1809, and the purchase of
the same tract of land by Wilkinson and White, for twelve
dollars and twenty-three cents; and also the act of sale from
them to John Towles, in 1816. Evidence of the claim of
C. Hargroider, of six arpents front, which Dr. Towles had
purchased of Henry Hargroider, in 1816, was offered to show
that it took the place of the *locus in quo*, by calling to bind
on the tract confirmed to Norton's heirs, below, and his own
lands above. It was then shown, that after the Norton or
Henry Hargroider claim, below, for ten arpents front, came
Bundick, junior, for six arpents front, and Bundick, senior,
for ten arpents front, which run and cornered on a *coulee* or
dry bayou, which made out of the Bayou Têche. By this

evidence it was attempted to crowd out and prevent Patrick Johnson's claim or the *locus in quo* from having any front.

The plaintiff showed, that by the township map the Johnson tract had been located by the United States surveyor, according to its call, with eight arpents front, and running back by parallel lines to the depth of forty arpents.

The several titles produced on the trial are fully set out, in the opinion of the court.

The district judge rendered judgment in favor of the plaintiff for the quantity of superficial arpents claimed, but, in order to let in the Norton or Henry Hargroider claim, gave only about two and one half arpents front. The defendants appealed.

The plaintiff, in his answer to the appeal, prayed that the judgment might be so amended as to give him the entire front, between his upper and lower boundary, on the Norton claim.

*Garland,* for the plaintiff.

1. The title of Patrick Johnson is a good one, being founded on a settlement and cultivation made by his father, and continued afterwards by his mother and himself. It is a title of a high order. *Act of Congress, March,* 1805. *Land Laws, page* 518, *section* 2. *Act, April* 21, 1806, *sections* 1, 2.

2. The defendant cannot contest the title of Johnson, because he claims under it himself. He can only show that he has become vested with all his rights, by purchase or otherwise.

3. He has not legally become a purchaser of the rights of Johnson to the land, as the sale made by judge White in 1809, was illegal and void, not being made in conformity to law, or in the manner directed by the legislature. It is stated in the deed the sale was made to the *lowest* bidder. It is not a just title that can transfer the ownership. *Acts* 1807, *sections* 6 *and* 9, *pages* 148, 154. 6 *Martin, N. S., page* 348. 1 *Louisiana Reports,* 491.

4. The sale from judge Wilkinson for himself, as attorney in fact of H. G. White, conveys only such title as they *might have* by virtue of the sale from judge White. See the terms

of the act, which is a private one, never recorded until this suit was commenced.

5. The defendant's plea of prescription cannot be maintained, because he does not hold by a *just title*, transferable of the ownership of the property. *Civil Code, page* 488, *articles* 67, 68, 70. *Louisiana Code, articles* 3437, 3445, 3449, 3450, 3451, 3453. 7 *Martin*, 403. 8 *Ibid.*, 629. 10 *Ibid.*, 289.

6. A transferable title, or one translative of property, is one which is complete in form, and contains all the usual requisites of an ordinary conveyance. It must be complete in all the essentials of a sale, and have nothing on its face that implies a doubt of its validity and legality. 7 *Martin, from* 401 *to* 10.

7. The title is defective in form; it does not show the authority by which the sale for taxes was made; no assessment for taxes is shown, and no assessment roll is produced in evidence. Without this no sale for taxes can stand. In all forced alienations, the authority under which they are made must be produced and accompany the sale. 7 *Martin*, 347, 7 *Louisiana Reports*, 46.

8. The defendant having, in his original answer, set up Johnson's title, and claimed the land under it, cannot, in his amended answer, set up another title derived from Hargroider, or any one else, thereby to defeat the title he first claimed under.

9. But suppose the defendant can set up the claim derived from Hargroider, we then contend that his title to it is not such a one as he can prescribe on. There is no warranty in the sale.

10. There is no conflict between the titles of Johnson and Hargroider, except as to a small quantity in front, and, to obviate all difficulties, the court below ordered the front to be equally divided, it being shown that there was land enough, not covered by any other claim, to give each title its superficial quantity.

11. The title of Johnson is a better one than that of Charles Hargroider, the former having a certificate of confirmation

from the United States, with ample proof of settlement and cultivation, under the Spanish government, and occupation since. The latter has only the certificate of confirmation, and the proof is positive that he never settled or occupied the land before the cession of Louisiana, or since Henry Hargroider admitted it before the commissioners. 8 *Martin*, 637, 727. 5 *Ibid.*, 679. 11 *Ibid.*, 207. 3 *Louisiana Reports*, 107.

*Brownson* and *Simon*, for the defendant.

1. The plaintiff's action is barred by the prescription of ten years. The defendant, Dr. Towles, and those under whom he claims, have had constructive and actual possession of the land in question for more than ten years, under a good and just title, translative of property, and cannot now be disturbed in the possession and ownership thereof. *Louisiana Code, articles* 3437, 3442, 3443.

2. If there were any defect in the defendant's title, it is cured by long and uninterrupted possession and prescription, because it was not made known to the defendant. A bare reference to the title of his vendor does not bring home to the vendee knowledge of its defectiveness, so as to prevent prescription from running. *Fletcher's heirs* vs. *Cavelier et al.* 4 *Louisiana Reports,* 274.

3. The defect in the title derived from the sale for taxes, if there be any, does not appear on the face of the deed. It recites the capacity of the officer making the sale, and that it was made under and by virtue of a law of the territory. The defect, therefore, could not be known to the purchasers, and they were consequently possessors in good faith. *Vide Carrel's heirs* vs. *Cabaret,* 7 *Martin,* 376.

4. The defendant is the owner of the *locus in quo* under another title. In the year 1816, he purchased from H. Hargroider, sole heir of C. Hargroider, six arpents of land in front, on Bayou Têche, by forty in depth, which bounded his land above, (being the Gravenberg tract) and below by the Philo Norton claim, and covers the whole front of the Johnson claim, which the plaintiff sets up as the basis of his

36

WESTERN DIST.
September, 1836.
───────
REEVES
vs.
TOWLES.
title.   The defendant has been in possession, under this title, which is not contested as defective, for more than ten years, and is entitled to hold it, as against the plaintiff, both by prescription and superiority of title.

5. The plaintiff cannot have his location as he claims, because when the other claims of Hargroider, Philo Norton and the two Bundicks, which commence at a point certain, run up the Bayou to the Gravenberg tract, which is permanent, there is no front left for the Johnson tract, without cutting off the fronts of the Hargroider tracts.

*Bullard, J.,* delivered the opinion of the court.

This is a petitory action, in which the plaintiff sets up title to a tract of land, of eight arpents front, on the Bayou Têche, with a depth of forty, bounded above by land of B. Gravenberg.   The title exhibited by him consists of a confirmation by act of congress, in 1816, of the claim of Patrick Johnson for a tract as above described, a conveyance by Johnson to John Reeves, and the adjudication of the same to the present plaintiff, at the probate sale of John Reeves's estate.   On the township plat, in the land office, this tract is represented as having been laid off and located according to its calls.   The plaintiff has therefore shown a title in himself, which would authorize a judgment in his favor, unless the defendant can show either a better title, or one which, however groundless in its origin, has become perfect by prescription.

The defendant claims to be the owner of the same tract of land under the title of Johnson, by purchase from Wilkinson and White, who, he alleges, purchased it at a sale for taxes in 1809, made by the parish judge, as collector of taxes for the county of Attakapas.   He also pleads the prescription of ten years under this title.

The defendant, in an amended answer, further alleges, that in 1816 he purchased from Henry Hargroider, as heir at law of Charles Hargroider, six arpents front of land, on the west side of the Bayou Têche, bounded above by land then belonging to him, and below by lands belonging to the

heirs of Philo Norton, and he claims said land by virtue of said sale, and by the prescription of twenty years.

We will first examine the title of the defendant, derived from Wilkinson and White, and the alleged prescription based upon it.

The deed from the parish judge of Attakapas, dated Nov. 24, 1809, recites, that in pursuance of the provisions of the act of 1807, he had that day exposed to public sale, to the lowest bidder, for the territorial taxes due thereon for the years 1807 and 1808, eight acres of land in front, with the usual depth, situated on the Bayou Têche, given in as the property of Patrick Johnson, when H. G. White and J. Wilkinson became the purchasers of the whole tract, for the sum of twelve dollars and twenty-three cents, the amount of taxes and costs. He then warrants to the purchasers all the right, title and claim of the said Patrick Johnson to said tract of land.

According to repeated decisions of this court, such a deed, unaccompanied by evidence of the assessment at least, is insufficient to show a valid alienation and that the former owner was divested of title. 6 *Martin, N. S.,* 347. 7 *Louisiana Reports,* 46.

The vendors of the defendant, according to the evidence before us, acquired nothing by the deed from the parish judge, and could convey no title to the defendant. If, however, they had assumed to sell the land as their own, although without title and without a disclosure of the defect of their title, their vendee, though holding under a sale à *non domino,* might have based upon it the prescription of ten years. The question then presents itself, whether the sale from Wilkinson and White be such a title as might form the basis of prescription ; whether it did disclose to the defendant a fatal defect in the title of his vendors, and whether such defect be one of form, in the sense of the code, which declares that a title defective in form cannot serve as the basis of the ten years' prescription.

Wilkinson and White, in their conveyance to the defendant, sell all the right, title, interest and claim in and to the tract

*The assessment is the authority on which the sheriff or collector proceeds to demand and sell property for taxes. It is analogous to an execution issuing on a judgment. To support a sheriff's deed, the party relying on it must show a judgment and execution. So, a deed for land purchased at a sale for taxes, unaccompanied by evidence of the assessment, is insufficient to show a valid alienation, and that the former owner is divested of title. Where the vendor assumes to sell without title, or a disclosure of the defects of his title, the vendee, though holding under a sale à non domino, may invoke the prescription of ten years.*

WESTERN DIST.
September, 1836.

REEVES
vs.
TOWLES.

But where A sells to B, all his right, title and interest in and to a certain tract of land, which is vested in him by virtue of a sale for taxes, made by a parish judge, being for the taxes due thereon by C, the original owner: *Held*, that A is expressly exempted from warranty, except against himself; and his title thus sold, being expressly referred to and set out, shows on its face the kind of claim, title or interest conveyed, and brings home to his vendee full knowledge of the title under which his vendor claimed, which, if defective, prevents the prescription of ten years from running.

of land in controversy, vested in them by virtue of a sale for taxes, on the 24th November, 1809, by James White, the judge of the parish of Attakapas, for the taxes due thereon by Patrick Johnson. They are expressly exempted from any warranty, except against themselves, and any person claiming through, by or under them.

Here the title, by which the defendant's vendors claim the land, is expressly referred to, and a recurrence to it is necessary, in order to ascertain what kind of claim, title or interest was conveyed, for the interest or title which they acquired may have been only an usufruct, or a lease for a term of years, or other limited estate belonging to Johnson at the time of the sale. The vendors do not assert that they acquired the tract of land, and refer to the title by which they acquired it as existing in a particular plan, as was the case in Fletcher *vs.* Cavelier, 4 Louisiana Reports, 267 and 274, but they leave the intention of the parties, as to the degree of title sold and conveyed, to be ascertained by reference to a particular sale made for taxes. We think this brings home to the defendant a knowledge of the title under which their vendors assumed to hold.

The next question is, what is the character of this defect? Is it such a defect of form as vitiates the title considered as the basis of the *ten* years' prescription? If the parish judge had assumed to sell the land as his own, his want of title would not have destroyed the right of his vendee to prescribe; and we hold, as in the case of Bedford *vs.* Urquhart, 8 Louisiana Reports, 234 and 241, that where one takes upon himself, as the attorney in fact of another, to sell, and delivers possession, that his deed of sale may form the basis of prescription, because the defect consists in the want of evidence of the mandate, and is not a nullity of form resulting from the legal incapacity of the vendors, and that after a lapse of years the power of attorney would be presumed in favor of the possessor.

The case now before the court differs very materially from that of Carrel's heirs *vs.* Cabaret, 7 Martin, 376, much relied on in the argument. The action in that case was to set

aside a will and to recover the estate of the testator, partly on the ground that the testament was *inofficious,* on account of a legal incapacity of the instituted heir. The prescription pleaded was one of five years against the action *testamenti inofficiosi.* In speaking of the form of the will, under a different branch of the case, the court use the expressions relied on, to wit: "When the law says a title defective in form shall not be the basis of prescription, what does it mean? A title which, though apparently good, has some latent defect? Certainly not. A title which, though apparently clothed with all the formalities required by law, may be proved defective by intrinsic evidence? No. It means a title on the face of which the defect is stamped." But the court adds, afterwards, "if the latent defect is known to the possessor, he cannot prescribe." But the case turned upon the principle that the nullity resulting from the *incapacity* alleged, that of concubinage, was *relative* only, and an action to annul a testament on that ground was limited to five years.

A title to serve as the basis of the ten years' prescription must be such as is in itself translative of property, and that title has always, by this court, been considered as deficient in form which does not furnish evidence that all the formalities required by law have been complied with, whenever the vendor acts in a public trust and takes upon himself to sell the property of another. An assessment of the tax, which is written evidence, forms an essential ingredient in the title of a purchaser at a collector's sale. Can we presume that there was an assessment of the tax, and that it was regularly demanded, and the sale of the land regularly made? We have stated that we could not. If so, the maxim applies *" de non existentibus et non apparentibus eadem est ratio."* Errors of law do not form a good foundation for acquiring property. *Française* vs. *Delaronde,* 8 *Martin,* 632. The simple certificate of a public officer that he has sold the property of another person is not a title translative of property, and he labors under an error of law who suposes that it is.

WESTERN DIST.
September, 1836.

REEVES
vs.
TOWLES.

A title, on the face of which a fatal defect is stamped, and which is known to the possessor, cannot be the basis of the ten years' prescription.

A title to serve as the basis of the ten years' prescription, must be in itself translative of property; but the title which does not furnish evidence that all the formalities required by law have been complied with, has always been considered deficient in form, whenever the vendor acts in a public capacity or trust, and takes upon himself to sell the property of another.

Errors of law do not form a good foundation for acquiring property.

WESTERN DIST.
September, 1836.

REEVES
vs.
TOWLES.

But it is contended that a purchaser at a tax sale has a right to presume that all the formalities of law have been complied with. The defect in the title does not consist in the proof that there was no assessment, but in the want of all proof that such assessment existed, because without it the officer was without warrant to sell, as the tutor, without judicial authority, has no capacity to sell the property of his pupil. If such authority cannot, in law, be presumed at the time of the forced alienation, at what time does it spring into existence for the purpose of divesting the title of the owner? If such alienation were only voidable, or the nullity resulting from a legal incapacity in a public officer without warrant of law were merely relative, we might perhaps fairly presume, after so long a silence, that he was warranted in his proceedings. But we consider the deed of the tax collector, though it proves *rem ipsam, i. e.*, that he sold, yet, as furnishing no evidence of his authority to sell without proof of an assessment, and therefore defective in form. Considering, as we do, that the defendant has identified himself with his vendors, and taken upon himself the risk of such title as they may have acquired by the parish judge's deed or certificate, and that their title was null, we are of opinion that the plea of prescription was properly overruled.

<div style="margin-left:2em">

The deed of a tax collector, though it proves *rem ipsam, i. e.,* that he sold, yet it furnishes no evidence of his authority to sell without proof of an assessment, and is therefore defective in form.

</div>

We come now to examine the title set up by the defendant, under a sale from Hargroider, for six arpents front, bounded above by lands of the defendant, and below by Philo Norton. The title of Charles Hargroider does not call for the same land covered by the title of Patrick Johnson. Its true location can only be ascertained by commencing a series of surveys from below. The claim of Bundick, senior, for ten arpents front, calls to commence at an *arroyo* as its lower boundary. This we suppose to be the *coulée* spoken of by the witnesses. Then comes the title of Bundick, junior, for six arpents; next, *that* of Henry Hargroider, for ten arpents, afterwards confirmed in the name of Philo Norton's heirs; and lastly, that of Charles Hargroider, for six arpents front. The land of Charles Hargroider, therefore, according to the

written evidence in the record, commences twenty-six arpents above the *coulée* or *arroyo*, and runs up the bayou for its front. On the contrary, the title of Patrick Johnson calls for Gravenberg's lower line, and runs down the bayou for its front of eight arpents. If the distance from the *coulée* to Gravenberg's lower line be forty arpents, there is sufficient land for all the claimants. The precise distance is not shown in the record. The witnesses suppose it to be upwards of thirty arpents. The defendant acquired, therefore, by his purchase, six arpents front of land, beginning at a distance of twenty-six arpents above the *coulée*, and before he can be maintained in possession of any of the land claimed in this suit he must show that this title of Charles Hargroider covers a part of the land in controversy. Having claimed, in his original answer, to be the owner of the Johnson title, and alleged long possession under it, he cannot now be permitted to dispute the *locus in quo*; he has admitted that Johnson's title covers the first eight arpents below the Gravenberg tract. It has been said, that a man may have two or more titles to the same land. This we do not doubt, but then it must be for the same land; but if he sets up prescription under one title he cannot avail himself of prescription under another not calling for the same land, because he cannot gainsay the character of his own possession. The defendant having failed to show that the title acquired from Hargroider covers a part of the Johnson tract, although he has rendered it probable that they will interfere, cannot, in our opinion, avail himself of it in this suit.

The court below, by its judgment, made an equal division of the front, supposed to exist between Gravenberg's lower line and the upper one of Philo Norton, between the parties. Of this the appellee complains, as an error to his prejudice, and he has prayed a reversal of the judgment in his favor. If the plaintiff was entitled to recover any thing, we are of opinion he is entitled to the whole tract, such as it is described in his title; and as it appears to us that his vendor never was divested of title, and that the plea of prescription will not avail the defendant, the judgment below must be reversed.

<div style="text-align: right">

WESTERN DIST.
*September*, 1836.

REEVES
*vs.*
TOWLES.

Where the defendant sets up in his answer to be the true owner of the plaintiff's title to the land in controversy, and alleges long possession under it, he cannot afterwards be permitted to dispute the *locus in quo*. He admits that the claim of the plaintiff covers the land in dispute.

</div>

It is, therefore, ordered, adjudged and decreed, that the judgment of the District Court be annulled, avoided, and reversed; and proceeding to give such judgment, as in our opinion ought to have been rendered below, it is further ordered, adjudged and decreed, that the plaintiff recover and be quieted in his title to the tract of land described in his petition, having a front of eight arpents on the Bayou Têche, bounded above by the lower line of the Gravenberg tract, as laid down on the plat of survey made under the direction of the District Court, with the depth of forty arpents, and that the defendant pay the costs of both courts.