Heirs of Wykoff Sr. vs. Miller.

---

### No. 11,979.

### HEIRS OF WM. WYKOFF, SR., VS. DAVID L. MILLER.

The admissibility of evidence given of facts not alleged should be objected to when offered, and the point reserved.

Parol evidence (admitted over objection) of a general character, of *ex parte* declarations, will not affect the validity of a title on the ground that the purchaser at tax sale was only the purchaser nominally and that his vendee was the real purchaser.

A defendant who is sued for property is not estopped in denying plaintiff's ownership of it because previously, at a time not fixed, he paid rental money on the property.

The tax sale was made by the proper officer and evidenced by a deed having no patent defects on the face of the papers; the purchaser was not in bad faith. The title became absolute and perfect by the lapse of ten years.

APPEAL from the Twelfth Judicial District Court for the Parish of Calcasieu. *Fournet, J.*

*Kenneth Baillio* and *E. P. Veazie* for Plaintiffs, Appellants.

*R. P. O'Bryan* for Defendant, Appellee.

Argued and submitted December 21, 1895.
Opinion handed down February 10, 1896.
Rehearing refused March 9, 1896.

The opinion of the court was delivered by

BREAUX, J. The purpose of the suit is to annul a tax sale.

The petition sets forth a number of grounds of nullity of the sale and offers as to form, and sufficiency of the allegations; no basis for objection.

The answer, also, of itself gave no rise to controversy, save that plaintiffs seek to hold the defendants to a judicial admission in having alleged as to the agency of David J. Reid that he bought the property October 13, 1874, and transferred it to the respondent in December, 1877, as shown by a receipt for the price; and that in 1888, Reid having died, the administrator of his succession made to the defendant a deed of conveyance in conformity with the receipt of December, 1877. The answer alleges his possession and avers that he is the owner by just title, duly recorded, and pleads the prescription of three and ten years. The property is described in plaintiffs' petition as Spanish grant No. 129 for Sec. 4, T. 8, S. R. 3 W. and Sec. 38, T. 9, S. R. 3 W. in the S. W. land district of Louis-

iana, comprising an area of one thousand seven hundred and sixty-eight acres, and it is alleged by the petitioners that they are entitled to the ownership and possession of this property, but that the defendant claims the ownership of the undivided half under a purchase of August 21, 188 , duly recorded. This half is the property claimed of the defendant.

There is, in consequence, plaintiffs urge, a variance between the title of the defendant and the property actually possessed by him, he being, it is stated by their counsel, in possession of the undivided half of Secs. 42 and 38, although his title calls for the upper half of the Spanish grant or Sec. 42; he further argues that if the tax sales of October 13, 1874, be held valid, the plaintiffs would be entitled to a judgment for an undivided half of the land occupied by the defendant.

The defendant upon this point disclaims ownership in argument, of Sec. 38, and points to the fact that without objection his title deeds were admitted in evidence, proving both title and possession.

The tax deed admitted in evidence describes the property as follows, viz.:

Spanish Grant No. 129, being the Sec. 42, Tp. 8, South range 3 West, and in Sec. 38; Tp. 9, South range 3 West, and containing one thousand seven hundred and fifty-eight acres and sixty-nine one-hundredths. The receipt given by the adjudicatee at the tax sale of 1874, reads: Received of David L. Miller the sum of one hundred and eleven dollars and seventy-five cents, being in full payment for the upper north half of the William Wykoff, Sr.; Grant No. 129, in T. 8, S. R. 8 W. The one-half now sold to David L. Miller, is eight hundred and seventy-nine acres.

(Signed.)                    D. S. REID.

*Lake Charles, Dec. 7, 1877.*

In the deed of sale in 1888, based upon this receipt, the property is described as the upper north half of the William Wickoff, Sr., Grant No. 129, in T. 8, S. R. 3 West, containing eight hundred and seventy-nine acres, and being one-half of the tract of land purchased by D. S. Reid at tax sale.

Having stated the facts bearing upon the asserted admission, we will consider the admission in a moment.

Further, in regard to the facts, the record discloses that the assessment and tax proceedings were made and carried on in the name

of a former owner who had died, it was generally known, long prior to their dates; no notice was served upon the petitioners wh ) were the owners by inheritance from this former owner; no appointment of a curator was made to represent the owners who did not reside in the parish; nor legal advertisement—the only advertisement made was by posted notice in the town of Lake Charles; the property was not divided into lots. The tax deed shows that the property was sold under act approved March 14, 1873; that "necessary publication and advertisement were made, to-wit: in three stated public places and one on the door of the court house in the parish of Calcasieu," and after having complied with all the formalities required by the act that the property was seized for the payment of the taxes due by William Wickoff, Sr., as owner according to the assessment for the years 1870 and 1871, at which sale D. J. Reid became the owner.

It is also a question whether the defendant was at one time a tenant of the plaintiff and thereby estopped from contesting their title.

The witnesses have testified upon the subject of lease; neither is positive of the amount paid by the defendant as tenant, the year for which payment was made, and the property said to have been leased is not referred to by them with any great degree of certainty.

Lastly, in regard to the asserted purchase by D. J. Reid for the defendant at tax sale of the property, upon objection the court ruled that parol evidence was not admitted to affect the right or title to real estate, but to show the manner of possession.

To this ruling the counsel for the defendant reserved a bill of exceptions.

The evidence consists of the recollections of a witness who was a boy at the time as to what his father, D. J. Reid, said about the title as being in defendant.

The District Judge rendered judgment decreeing defendant owner of section 42. From this judgment the plaintiffs appeal.

### EFFECT OF EVIDENCE ADMITTED WITHOUT OBJECTION.

Resuming in regard to the admissions by which plaintiffs contend the defendant is bound, it is evident that under very strict interpretation of the pleadings originally, the defendant had limited his title in this suit to the half; it remains for us to consider the effect that should be given to the evidence, admitted without objection, of title to the whole tract.

Respecting admissions *in judice*, Mr. Greenleaf says: "If a material averment be well pleaded and it is passed over by the adverse party without denial, it is thereby conclusively admitted." Evidence, par. 27, Vol. 1.

Here there was no denial; the evidence was admitted with consent of plaintiff, as will be seen by the following:

"By consent the following testimony that was introduced in another case * * * sale from Joseph Reid, administrator, to David L. Miller, with accompanying receipt," was admitted in evidence.

In consequence the issues were enlarged and the legal rights of the respective parties to the whole tract are before us. There was really no admission; plaintiffs had claimed the half and not the whole property.

The defendant met the issue tendered, and by meeting it did not admit away his title to the remainder, which the plaintiff had not claimed.

After having filed his answer he might have amended by claiming the whole, instead of half. There would have been no inconsistency in pleading.

"Evidence which goes to sustain a reconvention will be considered, if received without objection, as if the formal plea had been made." Ames vs. People's Telegraph, 5 An. 184; Eastman vs. Harris, 4 An. 193; Gayarre vs. Tunnard, 9 An. 255; Kean vs. Brandon, 17 An. 37.

Moreover, we do not discover that there is an admission such as claimed.

Again, upon that subject, evidence received without objection will be considered "as if responsive to an amended answer filed with consent (England vs. Gripon, 15 An. 304) ; and it has been held that an objection to an amendment not allowed is waived by evidence received without objection. Baines vs. Riggins, 2 La. 222. Even in regard to a plea which involved an admission it has been decided, if the other party does not avail himself of it, "but permits evidence to be filed negativing the fact, he in turn waives the advantage." Fenn vs. Holmes, 6 An. 199.

### ILLEGALITIES OF TAX SALE ALLEGED.

This brings us to a consideration of the nullities urged by plaintiffs.

The alleged failure to advertise the property for sale is not as fatal an objection as at first appears. Under the tax statute of that date

it was possible to sell property without advertising it for sale in a newspaper, by posting as in this case, if there was no official newspaper in the parish. There is no evidence of record showing that there was such a paper published. The presumption is that there was no official organ.

The other irregularities alleged against the validity of the tax sale are sufficient to have the act declared a nullity, if they are not cured by the prescription of ten years.

The defendant, or his authors, was in possession since the latter's purchase at tax sale more than ten years prior to the date this suit was brought.

The good faith of the defendant is attacked upon several grounds.

#### ALLEGED SIMULATION.

First, that Reed, the purchaser at the tax sale in 1874, was an interposed person who bought for the defendant. The evidence upon the subject is not of a sufficiently positive character to disturb a land title. The adjudicatee, Reid, died several years since. His *ex parte* statements were admitted, the court held, for the purpose of proving possession and not to affect the title. The defendant reserved a bill of exception to the court's ruling. From any point of view, it is not legally shown that·defendant did not become the owner as declared in the written documents of transfer.

The receipt was complete as a sale under private signature. It contained a description of the property and a statement of the price paid, and that without any reference to the prior tax sale. After these many years its verity could not be assailed in the manner proposed.

#### ESTOPPEL BY LEASE ASSERTED.

In the second place it is urged by the plaintiffs that the defendant was their ancestor's lessee of the property. The evidence shows that some time in the early seventies one of the plaintiffs collected rent from the defendant; this witness did not remember the amount, and was not exact as to the date. Whether it was prior to the date of the tax deed or subsequent, we are not informed. It may have been in 1870 or some time thereafter. The defendant as a witness denied that he was a tenant at any time. The other witness for the plaintiff testifies that in the year 1876 he and his father called on the defendant, who was living on the land in question, and that he

paid his father some rent which was afterward turned over to the agent of the Wykoff heirs. These statements are wanting in definitiveness; moreover the payment was made in 1876; the title of the defendant dates from the receipt already mentioned.

The receipt being under private signature it is argued by plaintiffs that it can not affect their right, as they are third persons. He held his right from the law under the receipt from his author; the tax deed had evicted the plaintiffs.

### THE PRESCRIPTION OF TEN YEARS.

The question is one of good faith of the possessor who invokes title *acquirendi causa* by the effect of ten years' prescription.

Upon that subject we quote from Baudry Lacantinerie, Vol. 3, p. 979, par. 1695: *Dans les cas ou le titre d'acquisition du possesseur est soumis a la transcription, l'accomplisement de cette formalité n'est pas nécessaire pour qu'il puisse prescrire la propriété par dix ans, la loi exige un justre titre, elle n'exige pas un titre transcrit. D'ailleurs le juste titre n'a été requis que comme base a la bonne foi du possesseur, et à ce point de vue il importe pas que le titre soit ou non transcrit.*"

Upon this point the application of the principle is to one who held under a tax title transferred as we have stated.

Good faith is defined as the legitimate belief of the possessor that his title has made him proprietor *justa opinio quæsita domini. Il a cette croyance legitime, par cela seul qu'il a peusa traiter avec la veritable proprietaire. Ainsi j'achête un imeuble de quelquun que je crois proprietaire et qui ne l'est pas a non domino quem dominum esse credideram. J'ai la bonne foi requise par l'article 2265, pour la prescription de dix et vingt ans.* Baudry-Lacantinerie, vol. 3, p. 979, Sec. 1697.

In regard to good faith, this court held in Davenport vs. Knox, 35 An. 486–87, although the sale was annulled for defects and irregularities in the proceedings relatiag thereto, yet inasmuch as it was ordered and made *by competent authority the purchase was doubtless bona fide* on the part of this defendant and he must be *regarded as a possessor* in good faith and entitled to the rights of such. (Italics ours.)

To the same effect is Hickman vs. Dawson, 35 An. 1086, 1087, citing numerous authorities.

Under circumstances similar to those in the cases just cited this

court held that the purchaser was in good faith. Eldridge vs. Tibbitts, 5 An. 389, and Robert vs. Brown, 14 An. 597-98.

Having determined that the defendant was in good faith, it only remains for us to state that a purchase in good faith, at a sale made by the proper officer, evidenced by a deed, becomes valid after ten years' possession as owner.

In Giddens vs. Mobley, 37 An. 417, 420, this court said: "Good faith purifies a title of its defects and causes the possessor under a just title to be preferred to the true proprietor who has remained so long silent and neglectful of his right," citing McCluskey vs. Webb, 4 Robinson, 205.

The court in that case approvingly refers to the utterance of Blackwell on Tax Sales. The good faith required in matters of tax titles should be construed liberally, because the statute of limitation is intended for repose; the good faith required " means that the occupant in acquiring did not act *mala fide.*"

In Carroll's Heirs vs. Cabaret, 7 Martin, 375, 406, the court decided that there was no defect stamped upon the face of the title. If latent nullities were admitted, unknown in point of fact to the possessor, to prevent prescription, the whole purpose of the law upon the subject would be defeated.

See also Frique vs. Hopkins, 4 N. S., pp. 212, 229, on the same point.

We quote from Dufour vs. Canfrenc, 11 Martin, 715: "The title presented here is perfect as it respects form; it pursues the very words of the statute; the defect is a want of right or authority in the sheriff to make such a conveyance, not a defect in the manner he made it. As nothing, therefore, appears on the face of the deed which is defective, the knowledge of the want of right in the person who sold is not brought home to the vendee, and his error was one of fact, not of law. It is difficult to see where is the difference between this case and an ordinary one of sale, where the purchaser acquires from a person who has no title, by a regularly executed act, before a notary public; in such a case the buyer acquires none, but he has that good faith which enables him to plead prescription."

In Pillow vs. Roberts, 13 Howard U. S. 471-78, it was announced that the purchaser was not bound to know that all the requirements had been followed in order to obtain a valid title under the statutes of limitation.

" There is no doubt that a tax deed, fair on its face and purporting to convey title to the lands sold, will constitute color of title under which adverse possession for the period prescribed in the statute of limitations will operate as a bar, notwithstanding it may be insufficient to pass an absolute title by reason of defects and irregularities in the tax proceedings prior to its execution." Eng. and Am. Ency., Vol. 25, p. 704.

The following quotation is as applicable here as it was in the decision from which we quote:

"The Constitution of 1868, under which the sale was made, directed that all deeds from tax collectors shall be received as *prima facie* valid sales, so that tax titles were placed on the same footing as other judicial sales and were subject to the same rules as sheriff's deeds.   Jurey & Gillis vs. Allison, 30 An. 1235. Formerly the assessment could not be assumed, but must be proved.   Under that constitutional provision it is presumed without proof, and the tax deed is *prima facie* valid, citing Innes vs. Bank, 29 An. 115; O'Hern vs. Hibernia Ins. Co., 30 An. 960; Renshaw, Cammack & Co. vs. Imboden, 31 An. 661; New Orleans Insurance Association vs. Labranche, *Ibid.* 840; Ludeling vs. McGuire, 35 An. 893. Under these authorities the tax deed was translative of property and after ten years had lapsed the title became absolute and perfect."

It is ordered and adjudged that the judgment appealed from is affirmed.