## ETHRIDGE–ATKINS CORPORATION v. ABRAHAM.*

### No. 5045.

Court of Appeal of Louisiana. Second Circuit.

May 2, 1935.

Richard B. Williams, of Natchitoches, for appellant.

Rusca & Cunningham, of Natchitoches, for appellee.

MILLS, Judge.

On September 27, 1930, John Abraham, a resident of Natchitoches parish, purchased from the Ethridge-Atkins Corporation of Rapides parish a new Dodge sedan for a consideration of $1,297. On the 8th day of October, 1931 (more than a year after the purchase), the balance having been reduced to $456, Abraham gave his note, secured by

chattel mortgage on the car, for that amount, with 8 per cent. per annum interest from maturity, and 25 per cent. attorney's fees, payable in twelve monthly installments of $38 each.

On October 23, 1933, the vendor filed suit on the note, alleging the nonpayment of the three last installments, totaling $114; and for the further sum of $225.55 alleged to be due on open account for merchandise and repairs.

Defendant answered, acknowledging the execution of the note, but setting up the defense that the car was unconditionally guaranteed to be mechanically perfect, whereas the motor was so defective that a new one was installed, without improvement, and that the operating expense of the car was excessive. He does not seek to set aside the sale, but alleges that the trouble and expense caused him by the defective condition of the car exceeds the balance on the note many times over, which, if not allowable as an offset or compensation, is pleaded in reconvention up to the amount due on the note. As to the open account, defendant alleges that a charge of $104.60 is an overcharge of $60.60, as it is for work on a truck agreed to be done for $44, and that nothing is owing on this item because the repairs were so improperly made that the truck broke down on the way home and was useless thereafter; that he is entitled to a credit of $50 for casings, tubes, rims, and bolts, and $12 for a generator left with plaintiff and never returned; and that the repair charges on the Dodge were made under the obligation of plaintiff's warranty and are not chargeable to defendant; that any balance above these items has been paid. His prayer is that the balance due on the notes be compensated by the damages, and that, in reconvention, he have judgment for $62, the value of the casings, etc., left with plaintiff.

There was judgment below rejecting the demands of plaintiff and allowing defendant judgment in reconvention for $62, with legal interest from judicial demand, and costs; from which plaintiff has appealed, and defendant has answered, asking that the amount allowed in reconvention be increased to $246.

The car was sold under the following guaranty: "We warrant it to be free from defect in material and workmanship under normal use and service, our obligation under this warranty being limited to making good at our factory any part or parts thereof, including all equipment or trade accessories, except tires supplied by us, which shall, within ninety days after making delivery of such vehicle to the original purchaser, or before such vehicle has been driven 4000 miles, whichever event shall first occur, be returned to it with transportation charges prepaid, and which its examination shall disclose to its satisfaction to have been thus defective; this warranty being expressly in lieu of all other warranties expressed or implied, and of all other obligations or liabilities on its part, and it neither assumes nor authorizes any other person to assume for it any liability in connection with the sale of our vehicle. This warranty shall not apply to any vehicle which shall have been repaired or altered outside of an authorized Dodge service station in any way so as, in the judgment of our manufacturer, to affect its stability or reliability, nor which has been subject to misuse, negligence or accident."

In addition, seller's agent admits that he promised that any time the car would not run he would see that it was fixed, provided the trouble was not due to vendee's negligence.

After about seven months, the car having made about 6,000 miles, new pistons were put in by plaintiff without charge. Three or four months later, the speedometer showing 9,000 miles, an entire new engine was installed, plaintiff charging $25 for the labor. Defendant complained of the excessive consumption of oil and gasoline, but tests made by plaintiff showed that on good roads it made 13 or 14 miles per gallon of gas, a good mileage for an eight-cylinder car. After the new engine was put in, defendant continued to complain, but plaintiff made no further concession. No other part of the car gave any trouble.

Unquestionably, something was wrong with the original motor, else the makers would not have supplied a new one. The car was purchased, according to defendant, in September, 1930. The new motor was installed about Easter, 1931. The note sued on for the balance of the purchase price was given October 8, 1931, and since that date defendant has paid nine of the monthly installments, up to July, 1932. Certainly this was done with full knowledge on his part of the car's condition. His chauffeur says that the sedan was in use at the time of trial. Though a mechanic named Red Lashley, described as a "high mechanic," worked on the car about four months before the trial, neither he nor any other mechanic is offered as a witness to its condition. We are not impressed with the testimony of defendant. He says the price was $1,495, while the mortgage shows $1,297.

Though not pleaded or substantiated, he claims payment. After admitting the execution of the note in his answer and making nine payments on it, he swears that it is a forgery. Though no witness testifies to any trouble with the car except the motor, he testifies that the only thing right about it was that the radiator had not begun to leak.

█ As to the truck, it is admitted that a price of $44 was put upon its repair. After examination, this was raised to $104.60. Defendant swears he never authorized this increase, yet his nephew, Jacob Abraham, who took the truck in, testifying for defendant, says that he called defendant up, told him of the increase, and was authorized by defendant to have the work done. Defendant claims that the truck broke down at Boyce on the way home and was worthless thereafter. Yet he testifies that the man sent to bring the truck back could not get farther than Boyce because he was drunk. His counsel contends that this is an error in the transcript; that the statement made was that the car was junk. There was no effort made to correct the record, so we will have to consider it as made up. Lawrence Poche, a mechanic who repaired the truck afterward, found nothing wrong but a broken piston. It was not taken back to plaintiff. The man who drove the truck does not testify. It is shown that he is at a C. C. C. camp, but his testimony could have been taken. In fact, the case was left open for that purpose.

█ Considering the terms of the guaranty, the fact that the motor alone was defective and that it was replaced with a new one after the guaranty had expired, that the note sued on was executed and nine payments made thereon long after the alleged defects were known to defendant, and that the car was in use at the time of trial, more than three years after its purchase, we consider that plaintiff is entitled to judgment on the note. We think that the testimony also fails to sustain the defense to the open account.

On his reconventional demand, the pleadings are enlarged by defendant's testimony, without contradiction or objection and without rebuttal, to $246 worth of tires, tubes, rims, etc., and a generator delivered to plaintiff for sale, for which it has not accounted. Defendant says that plaintiff was to receive 10 per cent. for the sales. Defendant is entitled, on the record, to judgment on his reconventional demand for $221.40. But it is suggested that defendant cannot recover on his reconventional demand more than is included in its prayer, which is: "Further prays for judgment in reconvention in his favor and against plaintiff in the sum of Sixty-two Dollars as above set forth."

There is no prayer for general relief.

█ There is no question of the controlling authority of article 156 of the Code of Practice, which provides: "If one demands less than is due him, and do not amend his petition, in order to augment his demand, he shall lose the overplus."

Undoubtedly, if the allowance of a larger amount than is prayed for, under our jurisprudence, conflicts with this article, the overplus must be rejected.

The purpose of the article is to avoid a multiplicity of suits and to prevent a plaintiff from bringing separate actions where one should conclude the whole matter. It is directly contrary to this purpose to prohibit the inclusion of all indebtedness in the one action. Uncle Sam Planting Co. v. Reynaud, 169 La. 199, 207, 124 So. 827.

In Michelin Tire Co. v. Delcourt (La. App.) 149 So. 313, 150 So. 303, it is held that an account filed of $1,604.85 could not be enlarged by the proof to $1,640.44, but the issue raised by defendant was that, because of the variance, no amount at all had been proven. The question of the enlargement of the pleadings is not discussed.

In Peterson v. Rabito, 164 La. 612, 114 So. 354, attorney's fees specified in the note and not claimed in the prayer were held remitted under the codal provisions. The holding is obiter dictum, as an amended petition had been filed, and the question of the enlargement of the pleadings was not urged.

In Gill v. Highway Commission (La. App.) 153 So. 329, damages were refused in an expropriation suit where none were claimed and proof admitted without objection was too vague.

█ Bird v. Johnson, 16 La. App. 155, 133 So. 516, is not in point. In that case the $60 in dispute was admissible under the pleadings to support the claim to set-off, and hence could not enlarge the reconventional demand, as the testimony was pertinent to the other issue. Only testimony otherwise inadmissible enlarges the pleadings.

In Huff v. Fitzsimmons, 15 La. App. 441, 130 So. 142, 132 So. 257, where attorney's fees, not claimed, were disallowed, the question of enlargement of the pleadings was not raised and is not discussed.

The cases of Merchants' & Farmers' Bank & Trust Co. v. Hammond Co., 164 La. 57, 58, 113 So. 763; Rousell v. Railways Realty Co., 165 La. 536, 545, 115 So. 742; Gallagher v. Louque, 169 La. 362, 125 So. 272; Sandifer v. Stephens, 8 La. App. 546; Alcolea v. Smith, 150 La. 482, 90 So. 769, 24 A. L. R. 815, all disallow interest under articles 157 and 553 of the Code of Practice, without comment. Article 553 provides that interest shall not be allowed unless expressly claimed.

In Homes v. James Buckley & Co., 165 La. 874, 116 So. 218, more than was demanded was disallowed in reconvention, where the increase was shown in the report of an expert appointed by the court. Manifestly, such a report cannot control the pleadings. The question of enlargement is not discussed.

In the case of Carre & Co. v. Massie, 113 La. 608, 610, 37 So. 530, there is nothing to indicate that evidence was introduced, without objection, tending to enlarge the pleadings. That issue is not discussed.

In Reimers v. Hebert, 162 La. 772, 111 So. 91, 92, the case was up on an exception of no cause of action. No evidence having been introduced, it is not at all in point.

The principle that evidence unobjected to takes the place of pleadings is so deeply grounded in our law that it is hardly necessary to cite authorities. Thiberge Printing Co. v. Drumm, 5 La. App. 550; Purser v. Hyams Coal Co., 6 La. App. 687.

Proof admitted without objection supplies necessary allegations. Eagle Mills v. Bourque (La. App.) 149 So. 891.

Evidence received without objection will be considered "as if it had been responsive to an allegation in an amended petition filed with consent." England v. Theodore Gripon, 15 La. Ann. 304; Heirs of Wykoff v. Miller, 48 La. Ann. 475, 19 So. 478; Cross on Pleading, p. 131.

The effect of these decisions is that inadmissible testimony heard without objection amends the petition to conform to the testimony as if by consent. There is no question that the parties, by consent and by permission of the court, without consent, can amend a petition instanter.

Therefore, the petition having been amended so as to conform in all respects to the testimony, article 156 has no application. The article is thus qualified, "and do not amend his petition, in order to augment his demand." An amendment made by force of law is the same in effect as one made by the pleader. If this is not true, the authorities cited above are meaningless. Therefore, the petition having been amended so as to augment the demand, there is no conflict with article 156 of the Code of Practice or with the cases first cited in support of it.

In accordance with the above, we find that in Kean v. Brandon, 17 La. Ann. 37, evidence received without objection supplied an unpleaded reconventional demand in the same way as if same had been formally pleaded. Over $5,000 was allowed. To the same effect is Dupuis v. Reynaud, 8 La. App. 116, 118.

A plea of contributory negligence which, under the law, must be specially pleaded, was supplied by the admission of testimony without objection. Baden v. Globe Indemnity Co. (La. App.) 146 So. 784.

Heirs were granted more than they prayed for in Harris v. Henderson Land, T. & I. Co., 9 La. App. 279, 119 So. 893.

Judgment was allowed for parts not claimed in the petition. Morse v. Oates, 11 La. App. 462, 123 So. 439.

Items of $250, $150, and $39.28 were allowed, though not claimed. Blodgett Const. Co. v. Board of Com'rs, 153 La. 623, 634, 96 So. 281.

We fail to see any hardship in this ruling. If the overplus is proven to be due and owing, why should it not be recovered? The other party has his remedy by objecting to the testimony. If he does not do so, it is presumed that it is because he recognizes the justness of the claim and consents to the implied amendment to cover it. The law abhors a multiplicity of suits.

For the reasons above assigned, the judgment on the main demand is reversed, and judgment is now rendered for plaintiff for $225.55, with 5 per cent. per annum interest thereon from October 23, 1933, until paid; and for the further sum of $114, with 8 per cent. per annum interest thereon from August 8, 1932, until paid, with 25 per cent. on said sum and interest as attorney's fees, with recognition of plaintiff's chattel mortgage and vendor's privilege upon the car sold.

The judgment in favor of defendant on his reconventional demand is amended by increasing same to $221.40, with 5 per cent. per annum interest thereon from October 23, 1933, until paid, plaintiff to pay the cost of the reconventional demand, and defendant those of the main demand; the cost of appeal to be equally divided.