## BARLOW *v.* RUTLAND, et al.

No. 43128        April 26, 1965        174 So. 2d 361

*W. W. Dent,* Collins, for appellant.

*A. K. Edwards,* Mendenhall, for appellees.

Kyle, P. J.

This case is before us on appeal by Mrs. Effie Garrett Barlow, defendant in the court below, from a decree of the Chancery Court of Simpson County, dismissing her petition to set aside a former decree of the court rendered in this cause appointing commissioners to make a partition of 240 acres of land in said county owned by the appellant and her sister, Mrs. Mary Garrett Rutland, complainant in the court below, and her two brothers, Henry Emmett Garrett and Robert Lawson Garrett, a non compos mentis, as tenants in common, and to have herself declared to be the legal and equitable owner of the entire 240 acres of land.

The record shows that on September 4, 1962, Mrs. Mary Garrett Rutland, one of the heirs of William H. Garrett, deceased, filed a petition in the Chancery Court of Simpson County for the partition of the above mentioned 240 acres of land among the several cotenants according to their respective interests. The defendants named in the petition were her above named two brothers and her sister, the appellant herein.

The complainant Mrs. Mary Garrett Rutland alleged in her petition that she and the defendants were the owners in fee simple, as tenants in common of the land described as follows:

TRACT NO. 1:

E½ of NE¼ and W½ of SE¼ and NE¼ of SE¼ Section 15, Township 2 North, Range 2 East lying and being in Simpson County, Mississippi, containing 200 acres, more or less, subject to:

(1) An oil, gas and mineral lease executed by petitioner and the above named defendants to Placid Oil Company, Shreveport, Louisiana, dated July 16, 1959, said lease being for a primary term of 10 years; and

(2) An oil, gas and mineral lease executed by Robert Lawson Garrett, Non Compos Mentis, by his legal guardian, the above named petitioner, to Placid Oil Company, Shreveport, Louisiana, dated September 21, 1959, and being for a primary term of 10 years.

TRACT NO. 2:

NW¼ of SW¼ of Section 14, Township 2 North, Range 2 East, Simpson County, Mississippi, less all oil, gas and mineral rights.

The complainant alleged in her petition that the above described land was owned by William H. Garrett, the father of the complainant and the defendants at the time of his death on March 7, 1940; that the said William H. Garrett left surviving him as his only heirs-at-law his widow, Mrs. Veda Garrett, and the complainant and her two brothers and sister, each of whom inherited an undivided one fifth interest in his estate; that Mrs. Veda Garrett died testate on January 3, 1952; that her last will and testament were duly admitted to probate in common form by a decree of the Chancery Court of Simpson County on June 8, 1954; and that in her will she devised and bequeathed all of her property

to the complainant, Mrs. Mary Garrett Rutland. The complainant further alleged that she was the owner of an undivided two-fifths interest in the above described 240 acres of land, being an undivided one-fifth interest vested in her by inheritance at the death of her father, and an undivided one-fifth interest bequeathed to her in the will of her mother; and that each of her two brothers and her sister were the owners of an undivided one-fifth interest in the land, subject to the above mentioned oil, gas and mineral leases executed by the complainant and the above named defendants to Placid Oil Company, for a primary term of ten years, and less oil, gas and mineral rights on the above described Tract No. 2.

The complainant prayed that a decree be entered for a partition of the above described lands, less the oil, gas and mineral rights owned by said parties among the several cotenants according to their respective interests, and in the event the court should find that a division of the lands in kind cannot be made without manifest prejudice to the rights of the parties in interest, that a sale of the lands, less the oil, gas and mineral rights owned by the parties, be ordered in accordance with the provisions of the statute in such cases made and provided.

On October 18, 1962, the defendant Henry Emmett Garrett and Effie Garrett Barlow filed their answer to the complainant's petition. In their answer the defendants admitted the allegations of the petition concerning the ownership of the lands. The defendants, however, averred in their answer that the lands, less the mineral rights, were susceptible of a division in kind, and that it would be to the best interest of the parties thereto to have the mineral rights remain in tact with each party owning his or her undivided interest in the oil, gas and mineral rights in the entire tract. The defendants denied that there should be a

sale of the land involved, but agreed that a division in kind should be made, less the mineral rights.

The above named defendants incorporated in their answer a cross-bill in which they alleged that the 240 acres of land involved in the litigation had been in the possession and under the control of the complainant and cross-defendant, Mary Garrett Rutland, since the death of their mother in the year 1954; that during that period of time there had been substantial amounts of timber cut and removed by the complainant and cross-defendant and her agents over the protest of the cross-complainants; and that the complainant and cross defendant should be required to account to the cross complainants and the other owner of the land for their proportionate parts of the timber cut and removed. The cross complainants therefore prayed that the complainant and the cross defendant be required to file in the cause a statement under oath of the amounts of timber, both sawlog and pulpwood, cut and removed from the lands, and giving the dates of the cutting, the names of the parties to whom the timber was sold, and the amounts received for the timber, and that a complete adjustment of the equities between the parties be decreed by the court.

On October 23, 1962, a petition was filed by Mrs. Mary Garrett Rutland asking for the appointment of a guardian ad litem for her brother, Robert Lawson Garrett, a non compos mentis. In her petition the complainant stated that she was the legal guardian of Robert Lawson Garrett; that summons had been issued and served on the said Robert Lawson Garrett, individually, and upon her as his legally appointed guardian, but inasmuch as Robert Lawson Garrett could not answer for himself and his interest in the cause might be antagonistic to that of the complainant, it was necessary that a guardian ad litem be appointed for him. On the same date a decree was entered appointing Harry Sullivan a mem-

ber of the Simpson County Bar, as guardian ad litem for the defendant, Robert Lawson Garrett, N.C.M.

On November 29, 1962, the complainant and cross defendant, Mrs. Mary Garrett Rutland, filed her answer to the above mentioned cross bill. In her answer she admitted that she was in possession of the land described in the bill of complaint, but averred that she was not in the exclusive possession thereof. By way of affirmative defense she stated that since the other co-tenants had left the state, other than Robert Lawson Garrett, N.C.M., who remained on the land and occupied the dwelling house situated on the land, it was necessary that the complainant and cross defendant protect her interest in the property and see that her afflicted brother had a home thereon. The complainant and cross defendant further averred in her answer that Willie Bernice Barlow, a son of the defendant Mrs. Effie Garrett Barlow, was born on the land and remained on the land until he reached the age of 21 years, and that he had lived on the land off and on since 1926.

The complainant and cross defendant admitted that timber had been cut from the land, but averred that the timber had been cut to conform to good forestry practice, and that it was necessary that the timber be removed in preparing the land for a permanent pasture; that the defendant Henry Emmett Garrett knew of the cutting of the timber and made no objection thereto. The complainant and cross defendant denied that the cutting of the timber was detrimental to the interest of the cross complainants. In her answer the complainant and cross defendant summarized the facts concerning the cutting of the timber during each of the years 1954 to 1962, inclusive. The total value of the timber cut was $935. However, approximately $200 of the pulpwood was cut and sold from land owned by her individually, making the sum of $735 the amount to be accounted for as timber cut on the land owned by the co-

tenants. The complainant and cross defendant also listed timber cut and removed during the months of September and October 1962, which aggregated the sum of $180.26.

On February 25, 1963, the complainant, Mrs. Mary Garrett Rutland, filed a motion for permission to amend her original petition and her answer to the defendant's cross bill, so as to show that she had paid the taxes on the land for the years 1949 and 1962, inclusive, in the total sum of $455.45; that she had put a new roof on the dwelling house at a cost of $337.58, and that during the year 1957 she had expended the sum of $232.03 in repairs upon the dwelling house. In the amendment offered, the complainant asked that each of the defendants be required to pay his or her pro rata share of the $455.45 expended by her in the payment of taxes, the $569.61 expended by her for repairs on the dwelling house. A decree authorizing the above mentioned amendment to the original petition was duly entered on February 25, 1963.

On March 4 the defendant Robert Lawson Garrett, N.C.M., by Harry Sullivan, his guardian ad litem, filed a formal answer to the amended petition, and submitted his rights to the protection of the court.

On March 8, 1963, the cause came on for hearing by the court upon the pleadings, process and oral and documentary evidence. At the conclusion of the hearing the chancellor found that after the accounting mentioned in the pleadings there was a balance of $3.34 due and owing by the tenants in common to the complainant, Mrs. Mary Garrett Rutland; that all the parties desired a partition of the land in kind, if such partition could be made; and that all the parties to the suit and their attorney of record had requested the court to enter an order in the case giving Robert Lawson Garrett the dwelling house and the parcel of land on which it was located as his proportionate part of the lands described in the complainant's petition. The chancellor found that

the Placid Oil Company held an oil, gas and mineral lease on the land, as set forth in the complainant's petition. It was therefore ordered, adjudged and decreed that K. W. Allison, Luke White and Clyde Bullock be appointed commissioners to divide the land into lots 1, 2, 3, 4 and 5 of equal value, and that two of the lots adjoining each other be awarded to Mrs. Mary Garrett Rutland, and that the lot on which the residence house was located be awarded to Robert Lawson Garrett, and that one lot be awarded to Mrs. Effie Garrett Barlow and one lot to Emmett Garrett. The commissioners were authorized to have a survey made of the land, and to award owelty, if necessary, to equalize the shares in value. The commissioners were also directed to have prepared a plat of the lands as divided into shares and report their actions to the court on the first Tuesday of the July 1963 term.

On July 6, 1963, the respondent, Mrs. Effie Garrett Barlow, who had joined in the answer to the complainant's petition filed by her brother, Henry Emmett Garrett, on October 18, 1962, filed a supplemental answer to the petition in which she alleged that she was the owner in fee simple of the 240 acres of land described in the original petition; that the property was bought by William H. Garrett, deceased, with money belonging to her, and although William H. Garrett held the legal title to the land in his name, the equitable title to the land was vested in her. The respondent further alleged that she gave the purchase money to her father William H. Garrett and he refused to convey the property to her, but admitted that he held title to the land for her as trustee. The respondent further alleged that the petitioner Mrs. Mary Garrett Rutland had caused timber of great value to be cut and sold to persons unknown to her, and that Mrs. Rutland should be required to account for the timber that she had sold or caused to be cut and sold, and a judgment should be rendered

against her for the amount received for the timber. The respondent further alleged that the decree which had been theretofore rendered in the pending cause were void for the reason that the respondent was never served with legal process by publication or by personal service.

The respondent therefore objected to the division of the land as ordered by the court on March 8, 1963; and the respondent converted her answer into a cross-petition and prayed that process be issued for each of the persons claiming an interest in the land; that a lis pendens notice be entered on the lis pendens docket in the office of the chancery court clerk, and that upon a final hearing of the cause the court decree that all of the orders theretofore entered in the cause be revoked and that the respondent be declared the legal and equitable owner of the 240 acres of land involved in the partition proceeding. The respondent also prayed for general relief.

On July 18, 1963, same being a day of the regular July term of the court, Mrs. Barlow filed a motion to reopen the case and set aside the former decree appointing commissioners to partite the land between the parties, in order that she might assert her claim of title to the entire tract for the reasons set forth in an affidavit attached to her motion. In her affidavit the affiant stated that during the depression in the 1930s she had sent a considerable amount of money to her family and her father and mother, and "that it was agreed and understood by her father and mother and by all the parties to the suit and heirs at law of her said father, who owned the land at the time of his death, that the title had been conveyed orally to the affiant; that she had a letter from the complainant to the effect that the title to the land was not placed in her name because if she should die, the title to the land would go to her husband, Mr. Barlow." The affiant further stated that, at the time of the trial of the partition suit, she

had overlooked showing her attorneys the letter to the effect that the land was hers, but no deed had been made to her for the reasons stated above. In her affidavit the affiant also offered to introduce witnesses who would testify that they had heard her father state that the land belonged to her.

The cause was heard by the court upon the application and motion of Mrs. Barlow to set aside the former decree of the court ordering that the land be partited and appointing commissioners to make such partition. Mrs. Barlow was called to testify as a witness on her own behalf, and in answer to questions propounded to her by her own attorney Mrs. Barlow stated that her father, William H. Garrett, died in March 1940, and that her mother Mrs. Veda Garrett died in 1952; and that her father left no will. The witness was then asked whether prior to her father's death she had "some understanding with him." Her answer was, "Yes, I will tell you the first understanding I had with him." Objection was made by opposing counsel to any testimony as to an understanding between the witness and her father, if the understanding pertained to the land, for the reason that such understanding would have to be in writing. The court sustained the objection, but permission was granted to the witness' attorney to make a record as to the understanding referred to; and upon further examination by her own attorney as to what that understanding was, the witness stated that she had no understanding with anyone. She was then asked to state what her claim to the land was. Her answer was, "My claim is everything there, timber, house, fences and everything." The witness then testified that, when she had the "final understanding," she was sending money to help keep the children in school and educate them to the best of her ability; that she had dug a well and helped cover the house, and she did many miscellaneous things besides sending checks

to her brother and sister who were away at school. The witness was asked what was the reason her father and mother did not convey the land to her? Her answer was that her father and mother said to her, "If we deed you that land and anything happens to you, Bud Barlow can step in and get everything we got." The witness was then asked to read a statement which she had prepared for use during the hearing. The court of its own motion ruled that there was no need to have her read the statement since she was on the witness stand and could testify to the facts contained in the statement. The statement was made a part of the record, however, and is before us on this appeal.

At the conclusion of the hearing on the motion the court stated that the record showed that at the last hearing Mrs. Barlow was represented by counsel and a full hearing was had, and the motion would be overruled. An order was therefore entered overruling the motion of Mrs. Barlow to set aside the decree appointing commissioners to make a partition of the land, and dismissing Mrs. Barlow's petition to reopen and the lis pendens notice of the motion theretofore filed in the cause.

The record shows that the above mentioned order was signed on July 18, 1963; that the appellant's attorney gave the official court reporter notice that the appellant desired to appeal to the Supreme Court from the judgment rendered by the Court dismissing her motion and application to reopen the case and set aside the decree ordering that the land be partitioned; and an appeal bond was filed by the appellant six days later. The record also shows that on July 24, 1963, the court entered an order continuing the case for the term, and that on November 11, 1963, an order was entered for the appointment of new commissioners to make the partition in lieu of the commissioners named in the decree of March 8, 1963, who because of illness had been unable

to serve; and the cause was again continued for the term. The record was filed in this Court on December 30, 1963.

The appellant has assigned and argued only one point as ground for reversal of the judgment of the decree of July 18, 1963, and that is, that the court erred in over-ruling the appellant's petition and motion to reopen the case.

It is argued on behalf of the appellees' attorneys that the appeal is an appeal from an interlocutory decree dismissing the appellant's petition to set aside the order of the court appointing commissioners to make a parti-tion of the land involved in the suit; that no final judg-ment had been entered in the case prior to the filing of the record in this Court; and that, since the chancel-lor did not grant an appeal from the interlocutory de-cree, this Court has no jurisdiction of the cause and the appeal should be dismissed; and the appellees' at-torneys cite in support of their contention on that point the cases of Gilleylan v. Martin, 73 Miss. 695, 19 So. 482 (1896) and Sowell v. Sowell, 101 Miss. 623, 57 So. 626 (1911).

We think it is clear that the decree of July 18, 1963, was not a final decree. The decree was in-terlocutory and falls within the rule announced by the Court in Gilleylan v. Martin, supra, and Sowell v. Sowell, supra. See also Beeks v. Rye, 77 Miss. 358, 27 So. 635 (1899); Sweatman v. Dean, 86 Miss. 641, 38 So. 231 (1905). No final decree had been entered at the time of the filing of the notice of appeal or at the time of the filing of the record in this Court. No appeal was granted by the chancellor in term time or in vacation.

Appeals from final decrees are governed by Missis-sippi Code Annotated section 1147 (1956). It allows appeal from any final judgment or decree, subject to certain exceptions irrelevant here. There is no final decree in the record, and it is so conceded by appellant.

Mississippi Code Annotated section 1945 (1956), defining the jurisdiction of this Court provides that, "a cause shall not be removed into said court until after final judgment in the court below, except in cases particularly provided for by law; . . ."

Mississippi Code Annotated section 1148 (1956), which provides for appeals from interlocutory orders or decrees, expressly provides as follows: "Such appeal if allowed must be allowed by the court or chancellor, and he shall determine whether the appeal shall operate as a supersedeas or not, but the appeal bond may be approved by the court or chancellor, or the clerk; but in case such an appeal is refused by the chancellor it may nevertheless be allowed by a judg of the Supreme Court."

The appellant's attorney admits that the motion to reopen and the petition to set aside the interlocutory decree appointing commissioners to make a partition of the lands cannot be treated as a bill of review, for the reason that a bill of review can be filed only after entry of a final decree, and no final decree had been rendered in this cause at the time of the filing of the motion and the petition, or at the time of the hearing on the motion and petition. A compliance with the statute on interlocutory appeals was not attempted, and the appeal must therefore be dismissed.

Appeal dismissed.

All Justices concur, except Rodgers, J., who took no part.