No. 544

First Circuit

———

**NONA MILLS CO., LTD., v. W. W. GARY LUMBER CO.**

———

(April 15, 1930. Opinion and Decree.)
(June 9, 1930. Rehearing Granted Restricted to Plaintiff's Right to Appeal.)
(January 26, 1931. Opinion and Decree on Rehearing.)

———

Thompson & Ferguson, of Leesville, attorneys for plaintiff, appellant.

A. B. Cavanaugh, of Leesville, attorney for defendant, appellee.

LeBLANC, J. This is a suit for damage for trespass which the plaintiff charges the defendant with having committed in bad

faith and without any right whatsoever, by going upon its property in the S. W. ¼ of the N. W. ¼ of section 13, township 2 N., range 10 W., in the parish of Vernon, and having tortiously and without its consent cut and removed therefrom 35,790 feet of hardwood timber. The damages asked for amount to $1,071.60, that being the value of the timber in its manufactured state at the price of $30 per thousand.

The defendant denies the trespass and avers that, if it did remove any timber from plaintiff's property, it did so in good faith, and, if plaintiff is entitled to recover any damage, it should be limited to the stumpage value of the timber. It then sets out its purchase of the timber from one Elias P. Franklin, who is alleged to have warranted title, and asks that he be called in warranty, and, in case judgment be rendered against it, that it recover a like judgment against Franklin.

At the inception of the trial, there was an admission entered in the record that the plaintiff was the owner of the land and timber involved in the suit, and this was followed by a tender on the part of the defendant of the sum of $125.44, that being the stumpage value at $8 per thousand feet for 15,680 feet, the quantity of timber it claims was taken.

It will thus appear that the only question to be determined is that of good or bad faith on the part of the defendant.

The lower court awarded judgment in favor of the plaintiff in the sum of $286.32, the stumpage value of 35,790 feet at $8 per thousand, holding that the defendant was not in bad faith. It dismissed the call in warranty against Franklin on an exception of no cause of action, reserving to the defendant the right to proceed against him in another suit.

The plaintiff alone has appealed, asking that the judgment be increased to the amount originally prayed for.

On the question of the quantity of timber that was taken from plaintiff's land, we fully agree with the district judge that the scale by plaintiff's witnesses should be accepted in preference to that of the defendant's. Three men scaled it together for plaintiff, all three being experienced men in that kind of work, who used the Scribner-Doyle scale of measurement, generally recognized by the courts of this state. Only one man scaled it for the defendant, using a different form of measurement. The difference in the result is too great to go into any comparisons, and, for the reasons already stated, we will accept the finding of the lower court on this point. The scale made by plaintiff's witnesses showed 3,181 feet more than the amount claimed in its petition, but of course it can only recover for the amount prayed for.

On the question of defendant's good or bad faith, we have to disagree with the trial judge and hold that the entry on plaintiff's land and the cutting of its timber by the defendant was in moral bad faith.

E. P. Franklin, who owned this timber, had 160 acres of it which he wanted to sell. Defendant seemed anxious to buy it. There had been previous negotiations between them, in one of which a man by the name of Brown, representing them, had been shown the lines between the two properties by Franklin. On this occasion, D. D. Dodd, their representative, who finally closed the deal, was there with Brown, but did not go over the property and was not shown where the line was. It must be borne in mind, however, that Brown was also their representative at the time, and he had this knowledge. There is no doubt

that there was an old, well-established line between the two properties. The government markers on the section corners could be located and the bearing trees and stubbs gave evidence of the line. Several witnesses were very familiar with it, and most all of them knew that there was this old, well-defined line.

In 1926, about the time defendant began cutting the timber they had bought from Franklin, a new line was blazed about sixty or seventy yards north of the old line, on the plaintiff's property. Defendant attempts to defend its action in trespassing on plaintiff's land by trying to make it appear that Franklin had blazed this new line, and that was the line they were to be guided by. Franklin, however, denies that he ever blazed it, and, as far as the record shows, no one knows who did. Certainly the plaintiff would not have blazed it and thereby incur the loss of that much land with valuable timber on it. Can it be then that the defendant, the only remaining party interested in the line, was the one who blazed it? If they did, there must have been some motive prompting them, for it is difficult to believe that such general knowledge about the old line as existed in the community could have escaped altogether their notice and attention. Stronger than all this, however, after they had crossed over about twenty or thirty yards on the plaintiff's property and had cut its timber, a man by the name of Richardson, who was familiar with the line, informed Mr. Dodd, their agent, that they were on plaintiff's property. This is uncontradicted. Even this warning, however, did not urge them to make further inquiry, and they continued cutting the timber up to the newly blazed line. If their intention in the whole matter is to be judged by their action after this definite and positive information, it would be hard indeed to acquit them of the charge of being in moral bad faith. If they did not know where the true line was, it was because they did not choose to know.

"A person who enters upon the land of another, and appropriates the timber thereon, under circumstances justifying the conclusion that, if he did not know that he was without right so to do, it was because he did not choose to know it, is a mere trespasser and depredator, and is liable in damages." Sanders v. Ditch et al., 110 La. 884, 34 So. 860.

The defendant, being a trespasser, in moral bad faith, has to pay damages, the measure of which, as fixed by the Supreme Court, is the value of the timber in its manufactured state without deducting the cost and expense of manufacture. Allen v. Frank Janes Co., Ltd., et al., 142 La. 1056, 78 So. 115.

As has already been stated, the evidence shows that there were 3,181 feet more of timber taken than is claimed in plaintiff's petition, and the price proven is also greater than that which is demanded. However, plaintiff is bound by the demands in its pleadings, and judgment cannot be rendered for a greater amount than is prayed for.

It is therefore ordered, adjudged, and decreed that the judgment herein appealed from be, and the same is, hereby amended by increasing the amount thereof from the sum of $286.32 to the sum of $1,071.60, with legal interest from judicial demand until paid, and, as thus amended, that it be affirmed.

For former opinion, see 127 So. 425.

ON APPLICATION FOR REHEARING

MOUTON, J. A rehearing was granted in

this case to be restricted to the question of plaintiff's right of appeal.

The district court rendered judgment herein against defendant company, which was amended by this court, 127 So. 425, by increasing the amount decreed below in favor of plaintiff.

The defendant company thereupon filed a motion for a rehearing alleging that this court was without jurisdiction because there was no order of appeal granted by the trial court to plaintiff, the appellant.

The record shows that an order for an appeal was granted to defendant company but which did not perfect the appeal by furnishing bond, and hence did not prosecute it in this court. On the other hand, the record shows that no order of appeal, either for a suspensive or devolutive appeal, was granted to plaintiff company which, however, furnished an appeal bond, and appeared as the only appellant here.

On the original trial in this court no motion to dismiss the appeal was filed by defendant for the want of an order of appeal to plaintiff company, this court failing to notice the lack of this sacramental requirement, heard the case, and rendered judgment increasing the amount allowed plaintiff, as hereinabove stated.

In Gibson v. Selby, 2 La. Ann. 628, our earliest cases in reference to the indispensable necessity of an order of appeal from the trial court to invest the appellate court with jurisdiction, the court used the following language:

"Consent of parties cannot dispense with the necessity of an order allowing an appeal. Per Curiam: The jurisdiction of the appellate court attaches only after a judicial order, divesting, when its terms are complied with, the jurisdiction of the inferior tribunal."

Obviously, if there be no such judicial order of appeal, though a bond be furnished by appellant, there is not divestiture of jurisdiction in the inferior tribunal, and consequently the jurisdiction of the appellate court does not attach.

In the case of Gagneaux v. Desonier, 104 La. 648, 29 So. 282, our jurisprudence in that question up to that time was fully and elaborately reviewed. The doctrine announced in Gibson v. Selby, 2 La. Ann. 628, above referred to, was fully approved, and so was a large number of adjudications to the same effect.

In this case, it is true that an appeal bond was furnished by plaintiff, but this could have no effect in sustaining the right of appeal because of the want of an order of appeal.

The correctness of this statement is made clear by the ruling of the court in McKnight v. Denouvion, 22 La. Ann. 373, in which the court said:

"We find no order of appeal in the record. The mere filing of a motion for appeal with an appeal bond, does not divest the court below of jurisdiction and invest the same in this court. The order of appeal is essential," etc.

In this case, not only there was no order of appeal, the fact is there was no motion for such an order, but, even if such a motion had been made, and though the bond was furnished, no divestiture of jurisdiction would have taken place below, because of no order, and consequently there would be no possible investiture of jurisdiction in this, the appellate court.

Counsel for plaintiff refers us to decisions where appellees, by appearing in the appellate courts without objecting to irregularities in the order of appeal or in the

appeal bond furnished, were held as having waived or abandoned their right to obtain dismissal in such cases.

The court in Gagneaux v. Desonier, 104 La. 648, 29 So. 282, in its review of the many decisions there cited, recognized this rule of waiver or acquiescence where the objection is directed against some irregularity or informality in the order of appeal or bond. The court, however, in that case, makes a distinction between cases where there are such defects or irregularities and the cases where there is no order of appeal. Where there is no such order, the case here, the objection is jurisdictional, and the court will on its own motion dismiss the appeal.

In the case of Untereiner v. Miller, 29 La. Ann. 435, the delay for the taking of an appeal was extended by agreement of counsel. The court held that the right to the appeal expired in one year, and that the term for appealing fixed by law could not be extended by agreement of the parties. On this subject it said:

"No consent of parties can give this court jurisdiction or enlarge its powers."

Further it says the court will take notice of its want of jurisdiction, although the parties are willing and consent not to raise any objection.

There was no such extension of the delay to an appeal by agreement of counsel in this case, but the above case is referred to because the court in Lafayette v. Farr et al., 162 La. 385, 110 So. 624, 626, in the course of the opinion, says, in referring to Untereiner v. Miller, above cited, that "therefore the ruling in Untereiner v. Miller et al., is in accord with the settled jurisprudence that, if there is no order of appeal from the court of original jurisdiction, the appellate court has no jurisdiction over the case and must dismiss the appeal on the court's own motion, even if the appellee waives his personal objection to a decision of the case on its merits."

No stronger or more emphatic language could have been used in recognition of the rule that, when there is no order of appeal, the waiver of personal objections by the appellee, or the consent of the litigants, cannot invest the appellate court with jurisdiction to try the case on the merits.

In Untereiner v. Miller, 29 La. Ann. 435, the time to appeal had expired, and the right as to it had ceased to exist. No one would hardly contend that the appellate court could in such a case have jurisdiction. That case was in Lafayette v. Farr et al., 162 La. 385, 110 So. 624, assimilated to a case where, for want of an order of appeal, the right to appeal does not exist. In such cases the appellate court has no jurisdiction whatsoever over the merits, even where the appellee waives his personal objections, as was said in Lafayette v. Farr et al., 162 La. 385, 110 So. 624, hereinabove referred to.

It therefore follows, from our analysis of the decisions which have extensively treated of this subject, we had no jurisdiction to authorize the judgment rendered increasing the allowance below, because of the total want of an order of appeal, and for that reason our judgment is null and of no effect, must be so declared, and the appeal by plaintiff be dismissed.

It is therefore ordered, adjudged, and decreed that the judgment so rendered by us be, and is hereby, declared to be null and of no effect, and that the appeal of plaintiff company in this case be, and is hereby, dismissed, at its cost.