Plaintiff, Albert Stouse, filed this suit against T.R. Snell, W.B. Morrison and T.J. Moss Tie Company for trespass on his property and prayed for judgment for the manufactured value of 451 cross-ties at 96¢ per tie, making a total of $412.96. Plaintiff alleged the cutting was in legal and moral bad faith, but, in the alternative, in the event the trespass and cutting of the cross-ties was not done in legal and moral bad faith, plaintiff prayed for a judgment of 25¢ per tie, a total of $112.75.
Plaintiff alleged that during the months of November and December, 1944, and January and February, 1945, that the defendant, T.R. Snell, cut and removed from plaintiff's property which is described in Article 2 of plaintiff's petition, the above stated number of cross-ties, and that the said defendant, T.R. Snell was acting for and in behalf of the said T.J. Moss Tie Company, under instructions of said company and under instructions of its agent and employee, W.B. Morrison.
[1] The defendant, T.R. Snell, on September 17, 1945 filed a plea of prescription of one year, stating that whatever timber was made into ties by exceptor was done more than a year prior to the filing of this suit, and that, therefore, plaintiff's claim was barred by said prescription. There is no ruling by the trial court on this plea of prescription but as counsel for defendant has not urged this plea, we assume that same was abandoned.
The defendant, T.R. Snell, answered denying the allegations of plaintiff's petition and alleged that he had never worked for T.J. Moss Tie Company or under its control or direction and that he had only sold said company a few ties, none of which came from plaintiff's land. Defendant T.R. Snell, under Article 7, Paragraph F, alleged: "That respondent made some 50 or 60 ties from timber which he believed to have been purchased from the Mansfield Bank, but did not knowingly make ties from timber belonging to the plaintiff herein."
Defendants W.B. Morrison and T.J. Moss Tie Company also denied the allegations of plaintiff's petition and set up that T.R. Snell had no connection whatever with them and that they had bought a few ties from T.R. Snell, and specifically denied that the T.J. Moss Tie Company, its employees or any one working for it or under its direction ever cut any timber whatever belonging to the plaintiff, Albert Stouse.
The District Court, after trial, rendered judgment in favor of the defendants W.B. Morrison and T.J. Moss Tie Company, rejecting plaintiff's demand, but as to the defendant, T.R. Snell, the District Court rendered judgment in favor of the plaintiff in the sum of $57.60, together with 5% per annum interest from August 15th, 1945 until paid.
The testimony reveals that the plaintiff was the owner of the following described property: "The Northwest Quarter of Southeast Quarter; Southwest quarter of Northeast Quarter, and East half of North-west Quarter of Northeast quarter of Section 14, Twp. 4 North, Range 10 West."
And, further, that the defendant, T.R. Snell and one David Hours, about the latter part of November and the first part of December, 1944, were cutting ties as *Page 769 
partners on the plaintiff's property. David Hours was not made a party to this suit but the record discloses that he paid the plaintiff for 75 ties which he was supposed to have cut off of plaintiff's land at that time. According to an estimate made by two of the witnesses in this case, there was a total of 526 ties cut upon the plaintiff's land, however this was not by count of the actual ties as they had already been removed. None of the witnesses for the plaintiff could testify as to how many ties were cut by the defendant, T.R. Snell. The only ties sold to the defendant W.B. Morrison consisted of 72 on February 21, 1945, and 20 on February 17, 1945. However, the defendant Snell testified that these ties came off of 40 acres of land owned by a Mr. Tannenbaum who lived in Dallas, Texas. There is no proof by the plaintiff that these ties came off of plaintiff's land. This property was about one-quarter of a mile from the land of David Hours and about one-half to three-quarters of a mile from the home of the defendant Snell. While David Hours did not testify, his wife, Mrs. Eunice Hours testified that her husband and Snell were cutting ties together and that she took her husband's dinner to him and saw the defendant and her husband cutting on the plaintiff's property. However, she could not testify as to how many ties were cut.
[2,3] From the testimony, there is no doubt that the defendant Snell was in legal and moral bad faith when he trespassed upon the plaintiff's property and cut the ties in question. While he testified that he did not know he was on the plaintiff's land, he offers no reason nor excuse for not knowing that he was on plaintiff's land and the Court believes that he knew full well that he was trespassing. "The measure of damages in Louisiana for timber trespass in case of moral bad faith is value of the manufactured product without deducting the cost of manufacture." Schneider v. Rockwell Powers Lbr. Co., D.C., 35 F. Supp. p. 695. Allen v. Frank Janes Co.,142 La. 1056, 78 So. 115.
In the case of Allen v. Frank Janes Co., 142 La. 1056, 78 So. 115, 116, the Supreme Court said: "In measuring the damages due by a trespasser for cutting and removing timber, this court has made a distinction between legal and moral bad faith. In both cases the value of the timber is fixed at the amount at which it was sold by the trespasser; but in the one case the expenses incurred by the trespasser are allowed to be deducted, whereas in the other, they are not. State v. F. B. Williams Cypress Co., 131 La. [62], 70, 58 So. 1033; [Guarantee] Trust [Safe] Deposit Co. v. [E. C. Drew] Investment Co., 107 La. 251, 31 So. 736."
From the testimony, we are unable to arrive at any specific number of ties cut by the defendant T.R. Snell from the plaintiff's, property.
While the District Court did not give any written reasons, that judgment was evidently based upon the answer of the defendant Snell as set forth in Article 7, Paragraph F, above quoted, for 60 ties at 96¢ per tie which would amount to $57.60, the judgment given by the District Court. The record further discloses that the Court asked the witness, N.B. Hours, if several were cutting on the plaintiff's land and this witness answered that such was true and he did not know whether the defendant cut all of them or just part of them.
The plaintiff has failed to prove that the defendants, W.B. Morrison and T.J. Moss Tie Company ever bought any of the ties that came off of the plaintiff's property. Furthermore, the testimony is conclusive that the defendant Snell was not acting for and in behalf of the T. J. Moss Tie Company nor under its instructions nor under instructions of its agent and employee, the defendant W.B. Morrison.
[4, 5] We are therefore of the opinion that the judgment of the District Court dismissing plaintiff's demand as to the defendants W.B. Morrison and T.J. Moss Tie Company is correct. We are of the opinion that while plaintiff has proven that defendant Snell did trespass upon the property of the plaintiff and that said trespass was in legal and moral bad faith, that the plaintiff has failed to prove any specific number of ties as having been cut by the defendant Snell and, of course, such proof is necessary to plaintiff's recovery. *Page 770 
The defendant has neither appealed nor answered plaintiff's appeal and the judgment cannot be changed in that respect. "(2) Since the trial judge has not assigned any written reasons for his judgment in plaintiff's favor for $200, we are not advised as to the grounds on which he predicated his award. But that is a matter of no importance, because the defendant has neither appealed nor answered plaintiff's appeal, and, therefore, the judgment cannot be changed in that respect. Westwego Canal 
Terminal Co. Inc. v. La. Highway Commission, 189 La. 870,181 So. 429."
For the reasons assigned, the judgment herein appealed from is affirmed.