This is a suit to recover the value of 15,000 board feet of timber whch ran to 18,000 when manufactured into lumber, and appraised at $75 per thousand feet; also damage to and destruction of a number of young trees valued at $250, and the further sum of $5 for repairs made necessary to a fence which had been damaged, all arising out of a certain alleged trespass committed by the defendants, Williams Lumber Company, a partnership composed of Leonard Williams, Jessie Carnahan and Robert Leonard Williams, through their agent, Herbert Corkern, on the lands of the plaintiff situated in the Parish of Washington. The total amount of the claim is the sum of $1,605.
In his petition the plaintiff sets out that he is the owner of the lands on which the alleged trespass occurred; that between the dates of April 14 and April 24, 1946, the defendants who operate a sawmill in Franklinton, in the Parish of Washington, through their agent or employee, Herbert Corkern, *Page 293 
willfully and in utter disregard of his rights, entered and trespassed upon his said land and removed therefrom certain fallen pine timber, the value of which he is seeking to recover in its manufactured state, because, as he alleges, the trespass was done in moral and legal bad faith. He alleges also that in committing the trespass, the defendants broke down the fence which enclosed the property and damaged it and also in using a tractor to go upon the land to remove the said trees they damaged a large number of young pine and other trees.
The defendant Jessie Carnahan excepted to the plaintiff's petition on the ground that he was not a member of or a party in the affairs of the partnership of Williams Lumber Company during the month of April, 1946. The other defendants filed an answer in which they admit that Williams Lumber Company operates a sawmill in the Parish of Washington as had been alleged and that Herbert Corkern is their agent or employee. Otherwise they deny each and every other allegation of the petition and pray that plaintiff's suit be dismissed at his costs.
By consent of counsel, the defendant Jessie Carnahan was dismissed as a party defendant and the case went on trial as between the plaintiff and all other defendants. On the evidence submitted the trial judge rendered judgment in favor of the plaintiff in the sum of $509 with legal interest. The defendants, Williams Lumber Company and Robert Leonard Williams took a suspensive appeal and the plaintiff has answered the appeal praying for an increase in the amount of the judgment rendered to the sum of $1,034. The defendant Herbert Corkern did not appeal.
The plaintiff offered and introduced in evidence the deed showing his acquisition of the property from Edward J. Myrick and Helen L. Grosjean Myrick on December 19, 1944. The sale of the property was on terms of cash and credit and in referring to the clause which relates to the certificate of mortgages and conveyances required by Article 3364 of the Revised Civil Code, we find it stipulated that it does not appear that the property has heretofore been alienated by the vendors except as follows: "A sale by Mrs. Helen L.G. Myrick to Leonard S. Issacks by private act dated October 30, 1943, duly acknowledged, recorded C.O.B. 161, Folio 141, covering 'all pine and hardwood timber of every kind and description including pulp wood, that is lying, standing, down or being upon the hereinabove described property,' and the act of correction of said act of sale by notarial act before Victor E. Planche, dated December 13, 1944, recorded C.O.B. 165, Folio _____. The purchaser herein takes cognizance of said sale and accepts this transfer subject thereto."
Whilst there is nothing in the record to show any transfer or sale of the timber which he had acquired, from Leonard Issacks to the Williams Lumber Company, it seems to be admitted that the timber was purchased or it was being removed under some form of agreement between the parties. That question is not at issue in the case.
Whilst also the deed covering the sale of the timber to Issacks is not in the record and that part of it is not referred to in the exception noted in the sale of the property to the plaintiff, it is conceded that the purchaser of the timber was given three years in which to cut and remove it from the land and that that period expired during the month of October, 1945. As the trespass complained of by the plaintiff occurred, according to his allegations, between the dates of April 14 and April 24, 1946, it is obvious that the period of three years had long since expired. As a matter of fact it does not seem to be disputed that the defendants did go upon the property and did remove certain timber which had already been cut and felled and was lying on the ground during the month of April, 1946, and as we understand, they are attempting to justify their going upon the property by claiming that this timber had been cut prior to the expiration of the three year period and the trees which had already been cut, being movable property, they had the right to go and remove them. They seem to contend that the only charge which could be levelled against them would be one of simple trespass for having gone upon the property without the owner's permission. *Page 294 
They also maintain that their action in going upon the property of the plaintiff was done without legal or moral bad faith.
There are then four points to be considered in the case. The first is whether ownership of the trees which had already been cut and which were lying on the ground had reverted to the plaintiff who had become the owner of the land; the second, if they were his property, whether the defendants acted in legal and moral bad faith in going upon the property in removing them; the third, what is the quantity of timber that was removed and fourth, if removed in legal and moral bad faith, what is its value as manufactured lumber which would be the amount of damage plaintiff would be entitled to recover.
[1] In their brief counsel for the defendants argue that the timber which had been cut and was lying on the ground had been converted from real property to a chattel or movable property and that its ownership could not therefore be transferred to the owner of the land. Therefore they contend that plaintiff was never the owner of this timber which was lying on the ground as he had acquired the property with full knowledge that the timber had been sold. In considering this point counsel have evidently overlooked Act No. 188 of 1904 which provides that "standing timber shall remain an immovable, and be subject to all the laws of the State on the subject of immovables, even when separated in ownership from the land on which it stands, * * *." If therefore the only claim to the timber depends upon the fact that it had been cut and severed from the soil and had thus become a movable, the provisions of that statute would seem to dispose of their contention.
But in construing the point involved in this case, it is not necessary to rely on that act alone. In the case of Ward v. Hayes-Ewell Co., 155 La. 15, 98 So. 740, 741, the court, after reviewing Several prior decisions, makes this statement: "It will thus be seen that this court has always held, whetherbefore or since the act of 1904, that standing timber was property subject to be acquired separately from the land on which it grows; but that when sold it must be cut and removed within the period agreed upon by the parties or fixed by the court in default of agreement; otherwise said timber reverts to the owner of the land. The act of 1904 had no other effect upon the status of standing timber so sold except to declare it an immovable, where before that it might have been argued that it was a movable; into the reason and purpose whereof we find it unnecessary to go at this time. Suffice it to say that thequestion for consideration herein is, not whether standingtimber, sold separately from the land, be a movable or animmovable, but whether the interest which the purchaseracquired therein be or be not defeasable by the expiration ofthe delay given in the contract or fixed by the court. And, aswe have just shown, this court holds that at the expiration ofsaid delay the timber reverts to the owner of the land. And that holding is in accord with the jurisprudence which prevails generally. See authority cited in St. Louis Cypress Co. v. Thibodaux, 120 La. 834, 840, 45 So. 742." (Italic ours.)
The case of Crowell Spencer Lumber Co. v. Burns et al.191 La. 733, 186 So. 85, 87, is a more recent case in which the same issue was presented to the court. The jurisprudence was again reviewed and the definite statement made that "it is well settled that if, in a sale of standing timber, a time limit upon the right of the buyer to remove the timber from the land is fixed in the deed, the title to the timber that is not removed within the time stipulated reverts to the seller,or to his successors or transferrees." The underscored phrase is particularly applicable to the plaintiff in the present case.
It is correct therefore, under the law as enunciated in these various cases, that the timber that remained on the land acquired by the plaintiff after October, 1945, reverted to him as the owner of the land, and that the defendants were without right to go upon the property to remove it.
[2] The next question is whether in doing so the defendants acted in moral bad faith. On this point, what testimony there is in the record is all in favor of the plaintiff. He bought the property on December 14, 1944 when the timber contract had several *Page 295 
months yet to run. He testified that in the early part of November, 1945, shortly after the expiration of the contract, he went to Franklinton to see Mr. Leonard Williams and advised him that as the contract to remove the timber had expired he wished that he would leave what was left there and not remove it. Mr. Williams assumed what seems to us to have been a rather arbitrary attitude as plaintiff states he told him that he was a young boy from the city who had plenty to learn about the timber business. He further told him that he could take the timber that had already been cut even though the contract for removal had already expired and advised that he go see a lawyer. This, plaintiff says he did. Apparently nothing was done and plaintiff was not aware that the timber had been removed at the time that it was in April, 1946. Leonard Williams admits that he removed the timber after having had the conversation with the plaintiff, which he states he recalls vaguely but in which he says that plaintiff told him he did not think that he had the right to remove the timber and that he did not tell him not to remove it. Later on he admits that plaintiff did tell him not to go on his land. In spite of this, and without further informing himself of his rights, he went upon the property and removed the trees. Under those facts the trial judge was perfectly correct in holding him and his partners in moral bad faith and making them responsible for the value of the timber as manufactured into lumber. As has frequently been held, that is the measure of damage in a case of this kind. Nona Mills Co. Ltd. v. W. W. Gary Lumber Co., 15 La. App. 560, 132 So. 257; Allen v. Frank James Co., Ltd., et al., 142 La. 1056, 78 So. 115; Stouse v. Shell, La. App.33 So.2d 767, a very recent decision of this court.
[3] The final and perhaps the most important question brought up for review is with regard to the amount of damage plaintiff is entitled to recover. The trial judge accepted the testimony of the defendants' witnesses regarding the log scale of the timber that had been removed. Leonard Williams testified that the total of pine and hardwood was 11,490 feet log scale, but stated that only 5,000 feet of it had been removed after the contract had expired. Herbert Corkern who was in charge of operations testified that there were about 7,000 feet removed during the month of April, 1946. The trial judge took this larger amount as the basis on which to fix the amount of the damage. He properly allowed a twenty percent average over-run in the sawmill which increased the log scale to 8,400 feet. It appears however that according to Williams' testimony the timber was measured according to the Doyle scale. He admits that had it been measured according to the Scribner-Doyle scale it would have run maybe four or five percent more. By the provisions of Act No. 108 of 1914 which was amended by Act No. 263 of 1918, the Scribner-Doyle scale seems to be recognized as the standard for measurement of saw logs in Louisiana and that being so it looks as though plaintiff would be entitled to this over-run of from four to five per cent in addition to twenty per cent over-run at the sawmill.
Allowing a twenty-five per cent increase instead of twenty per cent would give a total of 8,750 feet instead of 8,400 feet, the log scale arrived at by the trial judge. He fixed the value of the timber manufactured into lumber at the sum of $60 per thousand feet, basing this on the testimony of some disinterested witnesses who testified on this point. In that we think he was correct. Counsel for plaintiff says that that value should be fixed at $75 but he bases this on the testimony of a witness who was testifying about retail prices whereas the $60 value was shown to be the wholesale price which we think is correct. The increase of 350 feet log scale at $60 per thousand would amount to $21 which plaintiff is entitled to.
[4, 5] The district judge properly allowed plaintiff to recover the sum of $5 for repair to his fence which had been damaged by defendants in conducting their operations on his property. The claim of $250 for damage to young trees was not allowed for lack of sufficient proof. There was proof of such damage but none to show what part of it, if any, occurred during the operations that went on after the expiration of the timber contract. Besides, the *Page 296 
only testimony on this point is that of the plaintiff himself and it is very indefinite both as to the number of trees that were damaged and their value.
For the reasons stated, it is ordered that the judgment appealed from be amended by increasing the amount of the award from the sum of $509 to $530 and that as thus amended it be affirmed.